JAMES GREENLEAF'S LESSEE, PLAINTIFF IN ERROR V. JAMES BIRTH, DEFENDANT IN ERROR.

Ejectment. A deed of indenture, duly executed, acknowledged and recorded, was given in evidence by the defendant in an ejectment, which purported to convey certain lots of ground in the city of Washington, specifying the number of the lots, referring to the title under which they were held by the grantor. The deed contained the following exception: " except as hereinafter excepted, all those hereinafter mentioned and described lots, squares, lands and tenements, situate in the city of Washington, in the district of Columbia, which the said J G. and the said R. M. and J. N. were jointly interested in, each one equal undivided third part, on the day of the date of the indenture, the 10th July 1796." Among the lots described in the conveyance, were lots supposed to be 239, described as those which J. G. the grantor contracted for with Uriah Forrest and Benjamin Stoddert, by an agreement dated 15th July, 1794. The lot sued for was one of those included in a conveyance made by Forrest and Stoddert to J. G., on the 24th September 1794. The exception in the deed states the lots which it purports to apply to as " a square, number 506," another " square lying next to, and south of the said number 506, and all the other ground lying next to, and south of the square last aforesaid,, the said square containing, &c." which are to remain the separate property of the grantors, and also excepting all such squares, lots, lands and tenements, as were conveyed or agreed to be conveyed by the parties to the indenture, prior to the 10th July 1795. Held, that this exception is valid; and that the burthen of proof to show that the lot for which the ejectment is brought is within the exception, is not upon the plaintiff in the action. That in many cases the burthen of proof is on the party within whose peculiar knowledge and means of information the fact lies, is admitted. But this rule is far from being universal, and has many qualifications upon its application.

In the case before the court, the defendant has shown, prima facie, a good title to recover. The defendant sets up no title in himself, but seeks to maintain his possession as a mere intruder, by setting up a title in third persons, with whom he has no privity. In such a case it is incumbent upon the party setting up the defence, to establish the existence of such an outstanding title, beyond all controversy. It is not sufficient for him to show that there may possibly be such a title. If he leaves it in doubt, that is enough for the plaintiff. He has a right to stand upon his prima facie good title; and he is not bound to furnish any evidence to assist the defence. It is not incumbent on him negatively to establish the non-existence of such an outstanding title; it is the duty of the defendant to make its existence certain.

Deeds for lands in the district of Columbia, executed by an insolvent debtor, under the insolvent laws of the state of Pennsylvania, and under and in conformity with the insolvent laws of the state of Maryland, not having been enrolled in the general court where the lands lie; are, in a legal sense, mere nullities, and incapable of passing the lands described in them.

ERROR to the circuit court of the county of Alexandria, in the district of Columbia.

[Greenleaf's Lessee v. Birth.]

This was an ejectment instituted in May 1818, by the plaintiff in error, in the circuit court of the county of Washington, for the recovery of a lot of ground in the city of Washington, number 17, square 75. The case was subsequently removed to the county of Alexandria, where the same was tried, and a verdict and judgment rendered for the defendant. The plaintiff prosecuted this writ of error.

The plaintiff in error, James Greenleaf, held in fee simple, under a patent from the state of Maryland to William Langworth, and a deed from Uriah Forrest and Benjamin Stoddert, a large number of lots and squares of ground in the city of Washington. Afterwards, on the 13th of May 1796, he conveyed by deed of indenture to Robert Morris and John Nicholson, in fee simple, certain of the said lots, which are particularly described in the said instrument. The indenture purports to convey the said lots, " except as is hereinafter excepted;" and the exception, in a subsequent part of the same, is in the following words: " excepting, nevertheless, out of the lots, squares, lands and tenements above mentioned, all that square marked and distinguished in the plot of the city of Washington by the number 506, and that other square lying next to and south of the said number 506, and all that other square lying next to and south of the square last aforesaid, the said three squares containing in the whole about the quantity of one hundred and sixty-nine thousand and seventy-six and three quarters square feet, be the same more or less; which it is agreed by all the parties to these presents shall be and remain the sole and separate property of the said James Greenleaf, his heirs and assigns; and excepting also all such squares, lots, lands or tenements, as were either conveyed or sold, or agreed to be conveyed, either by all or either them, the said James Greenleaf, Robert Morris and John Nicholson, or any of their agents and attorneys, to any person or persons whatsoever, at any time prior to the 10th day of July 1795."

This deed was recorded in the city of Washington according to the provisions of the laws of Maryland.

James Greenleaf having, on the 10th of March 1798, applied to the supreme court of the state of Pennsylvania, for the benefit of the insolvent laws of that state, was discharged as an

insolvent debtor by that court, on the 31st day of March 1798.

At the time of this discharge, he executed a conveyance of all his estate, real, personal and mixed, to Robert Smith, Mordecai Lewis and James Yard, their heirs and assigns, for the benefit of his creditors, agreeably to the provisions of the insolvent laws of the state of Pennsylvania.

Subsequently, in March 1800, on the application of the creditors of Mr Greenleaf, Thomas M. Willing and Joseph S. Lewis were substituted as the assignees of the insolvent; and, they also refusing to act, the court, on the 12th day of March 1804, appointed John Miller, Junior, sole assignee of the estate and effects of Mr Greenleaf; and Robert Smith and James Yard, who survived Mordecai Lewis, on the 16th March 1804, conveyed to John Miller, Junior, all the estate and effects of the insolvent, which had been vested in them by the deed executed by him at the time of his discharge.

On the 9th of February 1799, James Greenleaf applied by petition to the chancellor of the state of Maryland for the benefit of the insolvent law of that state, passed in 1798; and he was discharged on the 30th of August in the same year. As a part of the proceedings in the case, the petitioner executed a deed conveying to a trustee named by the chancellor, all his property, real and personal; and all the requirements of the laws of Maryland were complied with.

Annexed to the schedule of the property of the petitioner for the benefit of the insolvent laws of Maryland, is a statement that all the property mentioned therein had been transferred by the petitioner to assignees appointed under the insolvent laws of Pennsylvania.

On the trial of the cause in the circuit court, the plaintiff tendered two bills of exceptions.

The first bill of exceptions was as follows:

On the trial of this suit, to maintain the issue on his part joined on the first count in his declaration, the plaintiff gave in evidence to the jury, a patent from the proprietors of the state of Maryland, to William Langworth, dated 5th July 1686, in these words (stating the same), and proved that the tenement, wooden messuage, and improvements in the

plaintiff's declaration mentioned, were comprehended within the bounds of the said patent, and the legal title to the said tenement, wooden messuage, and improvements, was deduced from the said patentee to plaintiff by divers mesne conveyances, and by the deed of the 20th September 1794, from Forrest and Stoddert to J. Greenleaf, mentioned in the deed of 13th May 1796; whereupon the defendant, to show a title out of the plaintiff, gave in evidence to the jury, a deed from the said James Greenleaf to Robert Morris and John Nicholson, dated 13th May 1796 (stating the same), admitted to have been executed by the said James Greenleaf, and offered no other evidence. Whereupon the plaintiff's counsel prayed the court to instruct the jury, that the said deed, unaccompanied by any other evidence, did not show such an outstanding title as was sufficient to bar the plaintiffs recovering in this suit; which instruction the court refused to give; to which refusal the plaintiff excepted, and prayed the court to sign and seal this, his bill of exceptions, which is accordingly done this 5th day of December 1829.

The second bill of exceptions stated that: on the trial of this suit, to sustain the issue on his part joined, the plaintiff gave in evidence to the jury, a patent from the proprietor of the state of Maryland (stating the same), and the legal title under the said patent is admitted by the defendant to have been vested in the plaintiff by the said patent, and by divers mesne conveyances, on the 30th day of August 1799. Whereupon, to prove a title out of the said James Greenleaf, the defendant offered in evidence to the jury, the proceedings in the case of the said James Greenleaf, an insolvent, before the chancellor of Maryland, setting out the said proceedings, and an act of the state of Maryland of 1798, ch. 64. To the admission of which proceedings of insolvency, the plaintiff by his counsel excepted, but the court overruled the said exception, and permitted the said proceedings to be read in evidence to the jury; and thereupon, on the prayer of the counsel for the defendant, the court instructed the jury that the said act of assembly, and proceedings in insolvency did show a legal title out of the plaintiff, and did preclude a recovery in this suit on the first count in the plaintiff's declaration.

The plaintiff's counsel thereupon gave in evidence to the jury,

the proceedings in the case of the insolvency of the said James Greenleaf, in the commonwealth of Pennsylvania, in these words (stating the same), and the conveyances therein mentioned, not recorded in the state of Maryland, and prayed the court to instruct the jury, that under the operation of the said proceedings in Maryland and Pennsylvania, the legal title to the premises in the declaration mentioned, notwithstanding the said conveyances, was not divested from the said James Greenleaf by any thing by the defendants so as aforesaid shown; which instruction the court refused to give. To the admission of the proceedings as aforesaid before the chancellor of Maryland, and to the instruction of the court given on the prayer of the defendant, as to the effect thereof, and of the said act of assembly, and to their refusal to instruct the jury as prayed by the plaintiff's counsel, the plaintiff, by his counsel, excepted, and prayed that this, his bill of exceptions, may be sealed and enrolled, which was done accordingly.

The case was argued by Mr Coxe and Mr Jones, for the plaintiff in error; and by Mr Swann and Mr Key for the defendant.

For the plaintiff, it was contended, upon the first bill of exceptions, that a defendant in ejectment cannot protect himself under an outstanding title, with which he is in no manner connected. But if such a title could avail the defendant in this case, he was bound to show that it was a valid and subsisting title, and covered the property in question. It was for him to show that the lot held by him was not within the exception in the deed of the 13th of May 1796, from the plaintiff in error to Morris and Nicholson. Cited 5 Peters, 457. The exception in the deed is not void upon its face. If the exception were void, the whole deed would be void. It is sufficiently certain. If the description is such as to pass an estate, it is sufficient as a reservation. The exception does not apply to the estate, but to a description of the land conveyed by the deed. There is enough in the conveyance, and in the exception, to enable any one to ascertain what was granted, and what was withheld.

As to the second bill of exceptions, it was said, that it was admitted that the title to the premises in controversy was, in

[Greenleaf's Lessee v. Birth.]

August 1799, in the plaintiff in error.   How had that title been divested?  By the laws of Maryland all conveyances of land must be recorded in the county where the land is situated: —without being recorded they do not pass any estate,   These provisions of the law apply to the proceedings under the insolvent laws of Pennsylvania, and to those before the chancellor of Maryland.

The Maryland deed has not been recorded as provided by the act of assembly; which requires that the same shall be enrolled within six months in order to make it operative.   The insolvent law in its spirit, if not in its terms, requires enrolment.   The deed must be acknowledged.   This is the act of the insolvent.   The recording is an act to be performed by the assignee; and the act relative to the recording of deeds considers this as an ordinary conveyance.   It does not require it to be recorded in the court of chancery.  It is, not a part of the proceedings in that court.   It is not executed under the inspection of the chancellor; he is only to have a certificate of its execution from the assignee.

The premises were not conveyed by the assignment executed under the insolvent laws of Pennsylvania.   The description of the property was too general to pass the estate.   After that assignment, Mr Greenleaf had only a resulting trust in the lots in Washington.   If that assignment was not recorded in the county of Washington, as it was not; he had the legal title, subject to a claim of the assignees to a conveyance: and this interest would not pass under the assignment in Maryland.  But he still held a mere naked legal estate, subject to the equity of his assignees and creditors.

It cannot be set up by the defendant, that the title to the premises is in the assignee in Pennsylvania.   That title, if it ever existed, is barred by the statute of limitations.

But the plaintiff does not set up his title against any of his trustees or assignees.   It is only against a mere intruder and stranger.

Mr Key and Mr Swann, contra.

The questions in the case are, 1. Whether the premises in controversy are within the exceptions in the deed to Morris

and Nicholson. 2. Whether the interest of the plaintiff in error, passed under the Maryland insolvent law.

The decision of the first question turns on the point, who must prove the lot not in the exception. It is admitted that the defendant must show an outstanding title; but he is released from a part of the difficulty in establishing such a title here, as the exception is altogether void from its uncertainty; it is a fraudulent trap, intended to operate secretly on the property conveyed by the deed.

Upon the law of exceptions, cited Shep. Touch. 77; 5 Coke, 12; 4 Com. Dig. tit. Fait, E. 8; 7 Co. Lit. 47, a; 3 Johns. Rep. 370; 8 Johns. Rep. 394; 3 Wheat. 224; Bul. N. P. 110.

As to the second bill of exceptions, the counsel for the defendant contended, that the refusal of the circuit court to instruct the jury, that the proceedings under the insolvent laws of Pennsylvania and Maryland did not divest the title of Mr Greenleaf, was correct.

By the act of assembly of Maryland of 1798, chapter 64, sections 5, 15, all the proceedings under the law are to be recorded. It is contended by the plaintiff that the title did not pass under the assignment, because the deed to Mr Cranch was not recorded in the county where the property is situated. But the recording in the court of chancery is all that is necessary. The general act relative to recording of deeds does not apply to such cases. The deed was a part of the chancery proceedings; and the provision in the insolvent law relative to the registering of the proceedings, is, so far as they would be affected by the recording law, a repeal of the same. Cited 2 Har. and John. 574; 2 Har. and M'Henry, 46.

As to a mere intruder showing title out of the plaintiff, the distinction seems to be this—he cannot show an outstanding title in a third person; but he may show that the plaintiff has himself parted with the title. Cited 3 Wheat. 225, 228; 9 Wheat. 516; 2 Har. and John. 112; 5 Burr. 2484; 4 T. R. 682; 6 Mass. Rep. 239.

Mr Justice STORY delivered the opinion of the Court.

This is a writ of error to the circuit court of the district of Columbia. The original action was an ejectment, brought in May 1818, by the plaintiff in error, against the defendant in

error, for a certain lot of ground, number 17, square 75, in the city of Washington, and was founded upon demises. Upon the trial (which was at December term 1829), a verdict was found for the defendant, upon which he had judgment. Two bills of exceptions were taken at the trial on behalf of the plaintiff; and the questions for the consideration of this court grow out of the matter of those exceptions.

The first bill of exceptions states, that at the trial a title to the premises in controversy was deduced from the state of Maryland, by mesne conveyances to James Greenleaf, the lessor of the plaintiff, in September 1794. Whereupon the defendant, to show a title out of the plaintiff, gave in evidence to the jury a deed from Greenleaf to Robert Morris and John Nicholson, dated the 13th of May 1796, the due execution of which was admitted, and offered no other evidence. Whereupon the plaintiff's counsel prayed the court to instruct the jury, that the said deed, unaccompanied by any other evidence, did not show such an outstanding title as was sufficient to bar the plaintiff's recovery in the suit; which instruction the court refused to give; to which refusal the plaintiff's counsel excepted. And the question before this court is, whether this exception is well founded.

The deed of Greenleaf to Morris and Nicholson purports to grant to them in fee as tenants in common, "except as is hereinafter excepted, all those hereinafter mentioned and described lots, squares, lands and tenements situate in the city of Washington, in the District of Columbia, wherein the said James Greenleaf, and the said Robert Morris and John Nicholson were jointly interested, in each one equal undivided third part, on the day of the date of the above named articles of agreement" (the 10th of July 1796), &c. &c. It then proceeds to specify three squares and lots contracted for by Greenleaf, with the commissioners of the city of Washington; and three thousand lots contracted for by Greenleaf, as agent of Morris, with the same commissioners; and about two hundred and twenty lots, contracted for by Greenleaf with Daniel Carroll; and about four hundred and twenty-eight and a half lots contracted for by Greenleaf with Notley Young: and then proceeds, "and also all those lots situate in the said city of Washington, supposed to be about two hundred and thirty-nine and one

quarter in number, for which the said James Greenleaf con-
tracted with Uriah Forrest and Benjamin Stoddert by an agree-
ment in writing, bearing date, &c. (15th of July 1794).   The
lot sued for was one of these lots, and was included in a con-
veyance made by Forrest and Stoddert to Greenleaf on the 24th
of September 1794.   Several other parcels of lots are then speci-
fied; and then comes the following exception: "excepting,
nevertheless, out of the lots, squares, lands, and tenements above
mentioned, all that square marked and distinguished in the plan
of the said city of Washington by the number 506, and that other
square lying next to and south of the said number 506, and all
that other square lying next to and south of the square last afore-
said, the said square containing, &c. &c., which it is agreed, &c.
shall be and remain the sole and separate property of the said
James Greenleaf, and his heirs and assigns.   And excepting also
all such squares, lots, lands, or tenements as were either con-
veyed or sold, or agreed to be conveyed either by all or either
of them, the said James Greenleaf, Robert Morris, or John
Nicholson, or any of their agents or attorneys, to any person
or persons whatsoever, at any time prior to the said 10th day
of July, A.D. 1795.

It is observable that the granting part of the deed begins
by excepting from its operation all the lots, squares, lands and
tenements which are within the exceptions.   The words are,
"doth grant, &c. except as is hereinafter excepted, all those
hereinafter mentioned and described lots, squares, lands and
tenements," &c.   In order, therefore, to ascertain what is grant-
ed, we must first ascertain what is included in the exception;
for whatever is within the exception, is excluded from the
grant; according to the maxim laid down in Co. Litt. 47 a,
si quis rem dat et partem retinet, illa pars quam retinet sem-
per cum eo est, et semper fuit.

It has been argued that the second clause in the exception is
utterly void for uncertainty, because it excepts "such squares,
lots, &c. as were either conveyed or sold, or agreed to be
conveyed," without stating to whom sold or conveyed, or
agreed to be conveyed, or giving any other description which
would reduce them to certainty.   And it has been intimated
that it is also void for repugnancy, because it is an exception
of a part which had been previously granted; and Co. Litt.

47 a, has been relied on in support of this objection; where it is laid down that an exception of a thing certain out of a thing particular and certain, will be void; as, if a man leaves twenty acres, excepting one acre, the exception is void. Com. Dig. Fait, E. 7. But without stopping to inquire in what sense, and to what extent the rule thus laid down is law, it is sufficient to say that there is no such repugnancy here; for the exception is not out of the thing previously granted, but is incorporated into the very substance of the granting clause.

As to the other exception, we do not think it is void for uncertainty. It refers to things by which it may be made certain; and id certum est, quod certum reddi potest. No one will doubt that the exception of squares and lots actually sold and conveyed, would be sufficiently certain; for they may be made certain by reference to the deeds of conveyance. And as all contracts for the sale and conveyance of lands must be in writing, there seems the same certainty in reference to the lots contracted to be conveyed by the parties or their agents.

It has been suggested, that the generality of the exception might open a door to frauds and impositions upon third persons, by enabling the parties to bring forward spurious or concealed contracts at a future time. But to this objection it is a sufficient answer, that the present is not a case of a bona fide purchaser or grantee, whose title may be affected by any such fraud or concealment. The defendant, Birth, is a mere stranger to the title, and for aught that appears, is a mere intruder. It does not lie in his mouth to contend that an exception, solemnly stipulated for by the parties, shall not be binding between them. They were content to take the conveyance upon these terms. There was certainly enough in the exception to satisfy them; and it would be a fraud in the grantees to attempt to avail themselves of the general and loose expressions of the exception, to avoid the titles of parties claiming title under Greenleaf by prior deeds or contracts of lots within the reservation. Even if the exception were void at law, a court of equity would relieve them against the claims of Morris and Nicholson, set up to their prejudice. It is not improbable that many such titles in this city are now held under the faith of this exception; and a declaration, at the instance of a mere

intruder, that it was utterly void, might work the most serious mischiefs.   We see no substantial ground to support it.

But if it were otherwise; still the other exception of the square number 506, and the other two squares next south of it, are sufficiently certain.   This court cannot judicially know that one of the squares next south of square number 506 is not square number 75; and there is nothing in the record that negatives it, for the defendant offered no evidence except the naked deed.

But it is said that if the exception is not void, still the burthen of proof is upon the plaintiff to establish that the lot in controversy is within the exception; because it is peculiarly within the privity and knowledge of the plaintiff's lessor what lots were conveyed and sold, and contracted to be conveyed, and the defendant has no means of knowledge.   That in many cases the burthen of proof is on the party within whose peculiar knowledge and means of information the fact lies, is admitted.   But the rule is far from being universal, and has many qualifications upon its application.   In the present case the plaintiff has shown, prima facie, a good title to recover. The defendant sets up no title in himself, but seeks to maintain his possession as a mere intruder, by setting up a title in third persons, with whom he has no privity.   In such a case it is incumbent upon the party setting up the defence, to establish the existence of such an outstanding title beyond controversy. It is not sufficient for him to show that there may possibly be such a title.   If he leaves it in doubt, that is enough for the plaintiff.   He has a right to stand upon his prima facie good title, and he is not bound to furnish any evidence to assist the defence.   It is not incumbent on him, negatively, to establish the non-existence of such an outstanding title; it is the duty of the defendant to make its existence certain.

Besides, this is the case of an outstanding title set up under a deed executed in 1796, under which, in respect to the act in controversy, the grantees are not shown either to have had, or to have claimed any possession or right of possession.   The present ejectment was brought in 1818, twenty-two years after the execution of that deed; and the trial had in 1829, more than thirty-three years after its execution.   Under such cir-

cumstances, a very strong presumption certainly arises that the lot was included within the exception; for it would be difficult in any other manner to account for such total absence of claim, or p. ssession, by the grantees. An outstanding title could hardly be deemed a good subsisting title by common presumption, under such circumstances; whereas, if the lot was within the exception, the non-claim would be natural and fully accounted for. We are therefore of opinion that the circuit court erred, in refusing the instruction prayed for by the plaintiff in the first bill of exceptions.

The second bill of exceptions, after stating that the defendant admitted that the legal title to the lot in question, under the patent from the state of Maryland, was vested in the plaintiff by the patent, and by divers mesne conveyances on the 30th day of August 1799, proceeds to state, that, thereupon, to prove a title out of James Greenleaf, the defendant offered in evidence to the jury, the proceedings in the case of James Greenleaf, an insolvent before the chancellor of Maryland, and the act of Maryland of 1798, ch. 64; to the admission of which proceedings the plaintiff objected; but the court overruled the objection and admitted the evidence; and thereupon, on the prayer of the defendant, the court instructed the jury, that the said act of 1798, and the proceedings of insolvency, did show a legal title out of the plaintiff, and did preclude a recovery in this suit on the first count in the plaintiff's declaration; that is to say, upon the demise of Greenleaf.

The plaintiff's counsel thereupon gave in evidence the proceedings in the case of the insolvency of Greenleaf, in the commonwealth of Pennsylvania, and the conveyances therein mentioned, *not recorded in the state of Maryland;* and prayed the court to instruct the jury, the under the operation of the said proceedings in Maryland and Pennsylvania, the legal title to the premises in the declaration, notwithstanding said conveyances, was not divested from Greenleaf, by any thing by the defendant so shown; which instruction the court refused to give: to which refusal, and instruction, and admission of evidence the plaintiff excepted.

By the laws of Maryland, (with certain exceptions not necessary to be mentioned) no conveyance is sufficient to pass any estate of inheritance or freehold in lands, or any estate

above seven years, except the deed or conveyance be in writing, and acknowledged in the general court, or before a judge thereof, or in the county court, or before two justices of the county where the lands lie, &c. &c., and be enrolled in the records of the county, or of the general court, within six months after the date thereof; see act of 1715, ch. 47; act of 1767, ch. 14; act of 1783, ch. 9; act of 1794, ch. 57; act of 1798, ch. 103. Neither the deed of assignment of Greenleaf to the trustee under the Maryland insolvency, nor the deed of assignment of Greenleaf to the trustees, under the Pennsylvania insolvency, have ever been enrolled in the general court, or in the county where the land in controversy lies. Unless, then, some exception can be found which exempts these assignments from the general law, the omission to enrol them renders them, in a legal sense, mere nullities, and incapable of passing any title to the land in controversy. There is no pretence of any exception in relation to the assignment under the Pennsylvania proceeding; and therefore that did not divest the title of Greenleaf. But in regard to the Maryland proceedings, it is said that there is, under the act of 1798, ch. 64, respecting insolvents, a constructive exception. That act provides, section fifth, that upon the petitioning debtor's (and Greenleaf was in that predicament) executing and acknowledging a deed to the trustee to be appointed, as the act requires, conveying all his property, real, personal, and mixed, &c. and the trustee's certifying the same, it shall be lawful for the chancellor to order that the said debtor shall be discharged from all debts, &c. Greenleaf was accordingly discharged, having in this respect complied with the terms of the act. The fifteenth section of the act provides "that all proceedings under this act shall be recorded by the register, who shall be entitled to the same fees as are fixed by law for services in other cases, &c. &c." Now the argument is, that this clause operates, pro tanto, a repeal of the general laws, in relation to the enrolment of conveyances, so far as respects assignments by debtors under the act. But we think this is not the fair construction of the act. There is nothing in the act which requires the assignment to be recorded; nor does it necessarily constitute a part of the proceedings before the chancellor. On the contrary, the fifth section contemplates, that it shall be executed and acknowledged by the debtor in the usual manner, and the trustee is to certify the

same to the chancellor.    If the deed is to be acknowledged in
the usual manner, then it is to be enrolled in the usual manner,
for no provision is made for its enrolment elsewhere; and the
only judicial notice which the chancellor has of it, as connected
with the proceedings before him, is by the certificate of the
trustee.    Nor is there any policy disclosed on the face of the
act of 1798, which could justify the court in presuming, that
the legislature intended, in respect to deeds of insolvent debtors,
that the ordinary securities of enrolment should be dispensed
with.    We think, then, that there was error in the circuit
court in admitting the proceedings under the Maryland insol-
vency; and also in instructing the jury that these proceedings
showed a legal title out of the plaintiff, and precluded a re-
covery in the suit.

For the same reasons, there was error in the refusal of the
circuit court to instruct the jury according to the prayer of the
plaintiff's counsel; that under the operation of the said pro-
ceedings in Pennsylvania and in Maryland, the legal title to
the premises was not divested from Greenleaf by any thing
shown by the defendant.

The judgment of the circuit court is therefore reversed, and
the cause is to be remanded to the circuit court, with direc-
tions to award a venire facias de novo.

Mr Chief Justice MARSHALL dissented from so much of the
foregoing opinion as requires the defendant to show that the lot
in the declaration mentioned, is not within that part of the ex-
ception contained in the deed from Greenleaf to Morris and
Nicholson, which excepts therefrom "all such squares, lots,
lands or tenements as were either conveyed, or sold, or agreed
to be conveyed, either by all or either of them, the said James
Greenleaf, Robert Morris and John Nicholson, or any of their
agents or attorneys, to any person or persons whatever, at any
time prior to the said 10th day of July 1795:" because he un-
derstood it to impose on the defendant the necessity of proving
a negative; and because the fact on which the exception de-
pends, is within the knowledge of the plaintiff and not of the
defendant.

This cause came on to be heard on the transcript of the re-

[Greenleaf's Lessee v. Birth.]

cord from the circuit court of the United States for the district of Columbia, holden in and for the county of Alexandria, and was argued by counsel. On consideration whereof, it is the opinion of this Court, that there was error in the circuit court in refusing to instruct the jury that the deed from Greenleaf to Morris and Nicholson, in the first bill of exceptions mentioned, unaccompanied by any other evidence, did not show such an outstanding title as was sufficient to bar the plaintiff's recovery in this suit, as in the same bill of exceptions mentioned. And it is further the opinion of this court that there was error in the circuit court in admitting the proceeding in the case of the said James Greenleaf, an insolvent, before the chancellor of Maryland, in the second bill of exceptions mentioned; and also in instructing the jury that the act of assembly of Maryland of 1798, ch. 64, and proceedings of insolvency aforesaid, did show a legal title out of the plaintiff, and did preclude a recovery in this suit, on the first count in the plaintiff's declaration; and also in refusing to instruct the jury, that under the operation of the proceedings in Maryland and Pennsylvania, in the same bill of exceptions mentioned, the legal title to the premises in the declaration mentioned, notwithstanding said conveyance, was not divested from the said James Greenleaf, by any thing by the defendant so as aforesaid shown, as in the same bill of exceptions is mentioned. It is therefore considered and adjudged by the court, that for the errors aforesaid, the judgment of the said circuit court be, and the same is hereby reversed, and the cause be remanded to the circuit court, with directions to award a venire facias de novo.