[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-16158

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 24, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-21759-CV-JEM

COLIN THOMAS, on behalf of
himself and all others
similarly situated,

Plaintiff-Appellant,

versus

GEORGE, HARTZ, LUNDEEN, FULMER, JOHNSTONE,
KING, AND STEVENS, P.A.,
CHARLES MICHEL HARTZ,
individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 24, 2008)**

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

WILSON, Circuit Judge:

Colin Thomas ("Thomas") appeals the district court's grant of summary judgment against his claim that attorney Charles Michael Hartz and the law firm, George, Hartz, Lundeen, Fulmer, Johnstone, King and Stevens, P.A. (collectively, "Hartz") violated the Driver's Privacy Protection Act ("DPPA") by wrongfully obtaining and using personal information contained in driver's license records. We affirm.

## I. BACKGROUND

On March 28, 2002, Hartz purchased from the Florida Department of Highway Safety and Motor Vehicles the registration information of all individuals in Miami-Dade County who registered both new and used motor vehicles from January 1, 2000 through March 31, 2002. On November 15, 2002, Hartz purchased the same information for the period April 1, 2002 through November 15, 2002. In total, Hartz accumulated 284,000 driving records of Florida residents. Since Thomas had purchased and registered a Chevrolet Impala in June 2002, his name and address was included in the information obtained by Hartz. Thomas brought suit under the DPPA seeking: (1) $2,500 in statutory liquidated damages; (2) equitable relief for the destruction of illegally obtained records; and (3) certification of a class of consumers.

2

## II. DISCUSSION

Thomas challenges two orders of the district court: (1) the grant of summary judgment in favor of Hartz; and (2) the denial of Thomas' motion to compel the production of discovery.

### A. The District Court's Summary Judgment Order

We review the district court's grant of summary judgment de novo. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006).

The DPPA "regulates the disclosure of personal information contained in the records of state motor vehicle departments (DMVs)." *Reno v. Condon*, 528 U.S. 141, 143, 120 S. Ct. 666, 668, 145 L. Ed. 2d 587 (2000). One section of the DPPA prohibits disclosures of personal information by a state's department of motor vehicles and any officer, employee, or contractor thereof, *see* 18 U.S.C. § 2721(a), while a separate section provides a private cause of action against persons who knowingly obtain, disclose, or use personal information from a motor vehicle record, *see* 18 U.S.C. § 2724(a).

Despite these prohibitions, Congress made clear that not all obtainment, disclosure, or use of personal information from motor vehicle records is wrongful. In § 2721(b), the DPPA provides fourteen "permissible uses," one of which allows for the information to be used in connection with "investigation in anticipation of

litigation" (hereafter, "the litigation clause"):

> For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, *investigation in anticipation of litigation*, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

18 U.S.C. § 2721(b)(4) (emphasis added).

Hartz asserted below that it obtained and used the vehicle records for the purpose of identifying potential witnesses to testify in lawsuits against automobile dealerships. At summary judgment, the district court held that Thomas failed to raise an issue of material fact as to the inapplicability of the litigation clause and failed to raise sufficient evidence as to any alleged impermissible obtainment or use. Thomas contends that the court: (1) erroneously placed the burden on Thomas to show "a purpose not permitted" under 18 U.S.C. § 2724(a); and (2) improperly weighed the summary judgment evidence. As set forth below, neither of these arguments has merit.

## 1. Burden of Proof Under 18 U.S.C. § 2724(a)

Thomas asserts that the litigation clause in § 2721(b)(4) constitutes an affirmative defense for which the defendant carries the burden of proof. Whether the "permissible uses" listed in § 2721(b) constitute affirmative defenses for which defendants carry the burden of proof is a matter of first impression for this circuit

4

and has not been addressed by our sister circuits.

The touchstone for determining the burden of proof under a statutory cause of action is the statute itself. *Schaffer v. Weast*, 546 U.S. 49, 56, 126 S. Ct. 528, 534, 163 L. Ed. 2d 387 (2005). When a statute is silent as to who bears the burden of proof, we resort to "the ordinary default rule that plaintiffs bear the risk of failing to prove their claims." *Id*.

The ordinary default rule, however, "admits of exceptions." *Id*. at 57, 126 S. Ct. at 534. One such exception is that "certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or exemptions." *Id*.; *accord Fed. Trade Comm'n v. Morton Salt Co.*, 334 U.S. 37, 44-45, 68 S. Ct. 822, 827, 92 L. Ed. 1196 (1948) ("[T]he general rule of statutory construction that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits, requires that respondent undertake this proof . . . .") (internal footnote omitted).

Another exception is that courts will "not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." *Schaffer*, 546 U.S. at 60, 126 S. Ct. at 536 (internal quotation marks omitted). This exception, however, "is far from being universal, and has many qualifications

upon its application." *Id.* (internal quotation marks omitted).

While there have been some circumstances where the Supreme Court has placed the burden of persuasion over an entire claim on the defendant at the outset of a proceeding, *see id.* at 57, 126 S. Ct. at 534-35 (citing *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 494, 124 S. Ct. 983, 157 L. Ed. 2d 967 (2004)), such instances "are extremely rare." *Id.*, 126 S. Ct. at 535.

In examining the statute, we first turn to the DPPA's provision for a civil cause of action:

> A person[1] who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C.A. § 2724(a).

In a straightforward fashion, section 2724(a) sets forth three elements giving rise to liability, i.e., that a defendant (1) knowingly obtained, disclosed or used personal information, (2) from a motor vehicle record, (3) for a purpose not permitted. The plain meaning of the third factor is that it is only satisfied if shown that obtainment, disclosure, or use was not for a purpose enumerated under § 2721(b). Section 2721(b) provides in full:

---

[1] The DPPA defines "person" as "an individual, organization or entity, but does not include a State or agency thereof." 18 U.S.C. § 2725(2).

6

**(b) Permissible uses.**--Personal information referred to in subsection (a) shall be disclosed for use in connection with matters of motor vehicle or driver safety and theft, motor vehicle emissions, motor vehicle product alterations, recalls, or advisories, performance monitoring of motor vehicles and dealers by motor vehicle manufacturers, and removal of non-owner records from the original owner records of motor vehicle manufacturers to carry out the purposes of titles I and IV of the Anti Car Theft Act of 1992, the Automobile Information Disclosure Act (15 U.S.C. 1231 et seq.), the Clean Air Act (42 U.S.C. 7401 et seq.), and chapters 301, 305, and 321-331 of title 49, and, subject to subsection (a)(2), may be disclosed as follows:

**(1)** For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.

**(2)** For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers.

**(3)** For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only--

    **(A)** to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and

    **(B)** if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

**(4)** For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

**(5)** For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals.

**(6)** For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.

**(7)** For use in providing notice to the owners of towed or impounded vehicles.

**(8)** For use by any licensed private investigative agency or licensed security service for any purpose permitted under this subsection.

**(9)** For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49.

**(10)** For use in connection with the operation of private toll transportation facilities.

**(11)** For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains.

**(12)** For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

**(13)** For use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains.

**(14)** For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

18 U.S.C. § 2721.

In reading § 2724(a) and § 2721(b) together, we conclude that the DPPA is silent on which party carries the burden of proof and, as such, the burden is properly upon the plaintiff.  Thomas argues that the permissible uses listed in

§ 2721(b) function as statutory exceptions and, therefore, the defendants should carry the burden of proof to secure entitlement of such exceptions.

We disagree. The DPPA plainly sets forth three elements giving rise to liability, the third of which is whether the subject act was *"for a purpose not permitted."* 18 U.S.C. § 2724(a) (emphasis added). The emphasized language does not frame the § 2721(b) enumerations as exceptions to a general norm. That is, Congress could have said, for example: "A person who knowingly obtains, discloses, or uses personal information, from a motor vehicle record, *shall be liable to the individual to whom the information pertains, except as provided in 18 U.S.C. § 2721(b)*." But Congress did not so draft § 2724(a), and if we read it as such, we place the burden of proving a § 2721(b) enumeration upon the defendant when Congress has not instructed us to do so. Just as we will not write words into a statute to provide a different, or more preferable meaning, *see, e.g.*, *Badaracco v. Comm'r of Internal Revenue,* 464 U.S. 386, 398, 104 S. Ct. 756, 764, 78 L. Ed. 2d 549 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement."), so, too, will we not alter statutory structure and language for the purpose of triggering application of a rule of construction. *See Dorelien v. U.S. Att'y Gen.*, 317 F.3d 1314, 1321 (11th Cir. 2003) (en banc) ("Our role is not to second-guess Congress's drafting choices.

Rather, our function is to apply statutes, to carry out the expression of the legislative will that is embodied in them, not to 'improve' statutes by altering them." (internal quotation marks and alterations omitted)).

Congress is adept at drafting general norms that provide for exceptions, and frequently does so; indeed, it did just this with the DPPA in § 2721(a).[2] In both subparts of § 2721(a), Congress explicitly excepted the § 2724(b) enumerations:

> **(a) In general.**--A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity:
> **(1)** personal information, as defined in 18 U.S.C. 2725(3), about any individual obtained by the department in connection with a motor vehicle record, *except as provided in subsection (b) of this section*; or
>
> **(2)** highly restricted personal information, as defined in 18 U.S.C. 2725(4), about any individual obtained by the department in connection with a motor vehicle record, without the express consent of the person to whom such information applies, *except uses permitted in subsections (b)(1), (b)(4), (b)(6), and (b)(9)*: *Provided,* That subsection (a)(2) shall not in any way affect the use of organ donation information on an individual's driver's license or affect the administration of organ donation initiatives in the States.

18 U.S.C. § 2724(a) (emphasis added).

Section 2721(a) plainly sets up the enumerations in § 2721(b) as exceptions, whereas § 2724(a) plainly does not. We do not believe that this difference in

---

[2] Unlike § 2724(a)'s private cause of action, § 2721(a) is directed at state motor vehicle departments and officers, employees, and contractors thereof—not private individuals—and prohibits only disclosures—not obtainment and use.

language is meaningless. *See Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 300, 78 L. Ed. 2d 17 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)).[3]

Thomas also argues that the burden to show "for a purpose not permitted" should be allocated to defendants because the factual presence of any one permissible purpose in § 2721(b) is "peculiarly within the knowledge" of the defendant. *Schaffer*, 546 U.S. at 60, 126 S. Ct. at 536 (internal quotation marks omitted). From the outset, we recognize that the Supreme Court is cautious in its application of this rule. *Id*. (stating that the "'rule is far from being universal and has many qualifications upon its application.'" (quoting *Greanleaf's Lessee v. Birth*, 6 Pet. 302, 312, 8 L. Ed. 406 (1832); citing 2 J. Strong, McCormick on Evidence § 337, p. 413 (5th ed. 1999) ("Very often one must plead and prove matters as to which his adversary has superior access to the proof."))). We have previously applied this rule where a plaintiff would be unreasonably required "to

---

[3] We note that placing the burden upon the defendant to show the third element would essentially relegate the motion to dismiss stage to something less than a speed bump in § 2724(a) actions. Plaintiffs could survive a Fed. R. Civ. P. 12(b)(6) challenge upon the bare allegation of a defendant's mere obtainment of information from a vehicle record.

11

speculate whether defendants intend to assert [a statutory defense] and could result in unfair surprise at trial." *Jackson v. Seaboard Coast Line R. R.*, 678 F.2d 992, 1013 (11th Cir. 1982). In this instance, we are unconvinced that facts giving rise the § 2721(b) enumerations are so peculiarly within the knowledge of the defendant as to cause a shifting of the burden of proof.

Many of the § 2721(b) enumerations are tied to a particular occupation or organization and its corresponding lawful need for the information. *See* 18 U.S.C. § 2721(b)(1) (government agency); § 2721(b)(4) (legal investigation, service, proceedings, and enforcement); § 2721(b)(5) (researchers); § 2721(b)(6) (insurance); § 2721(b)(7) (towed or impounded vehicle); § 2721(b)(8) (private investigative agency or security service); § 2721(b)(10) (private toll transportation facilities). Other § 2721(b) enumerations point to a particularized purpose. *See* 18 U.S.C. § 2721 (b)(2) (safety, theft, emissions, product alteration, performance monitoring, parts and dealers, research, updating of records); § 2721(b)(3) (verification of individual's submission of information); § 2721(b)(9) (employer verification of employee's information); § 2721(b)(14) (state authorized use related to operation of vehicle or public safety). Finally, the remaining three enumerations only apply when the plaintiff has provided consent. *See* 18 U.S.C. § 2721(b)(11)-(13).

Thus, for example, if a plaintiff names a law firm (as here) or an insurance agency as the defendant, there is a high probability that subsection (b)(4) is at issue in the former and (b)(6) in the latter. Similarly, if a plaintiff is a recipient of a mass marketing letter, it is no secret that (b)(12) is at issue, which allows for bulk distribution of solicitations only if express consent is obtained. Upon close examination of § 2721(b), we conclude that plaintiffs will not typically be left in the dark as to which § 2721(b) enumeration, if any, will be asserted as applicable by the defendant. We are confident that proper use of discovery tools, such as interrogatories, requests for admissions, and depositions, will reveal which enumerations may apply and where a plaintiff must accordingly aim its argument.

In the end, where Congress does not squarely address the question, where the statute's structure and language do not suggest a shift of the burden to the defendant (through use of statutory exceptions, for example), and where plaintiffs are not peculiarly at a disadvantage in the discovery of necessary facts, we will not shift the burden or proof, or any element thereof, to the defendant.

2. **Whether the District Court Improperly Weighed the Summary Judgment Evidence**

Upon Hartz's motion for summary judgment, the district court recognized the evidence showing that obtainment of the information was for the purpose of

13

Hartz's investigation in anticipation of litigation. (D.E. 336 at 9.) Specifically, in his affidavit, Charles Michael Hartz averred that he requested the information because the automobile dealers he was litigating against were asserting that plaintiffs needed to plead and prove multiple acts of deceptive and unfair trade practices to state a deceptive and unfair trade practice claim under Florida law. (D.E. 30 at Appx. B, ¶ 5.) Thomas does not contend that this was a meritless or even mistaken view of the law at the time.[4] The court next recognized that the deposition testimony submitted by Hartz showed that the information was used to send one-thousand "Custom and Practice" letters, which aimed at obtaining evidence showing a custom and practice of deceptive acts engaged in by dealerships. (D.E. 336 at 9.) In this vein, a copy of the Custom and Practice letter was produced in discovery as well as the number of individuals to whom Hartz had sent the letters.

In response to this evidence, Thomas made three claims: (1) Hartz did not identify the names of specific cases giving rise to the Custom and Practice letters;

_____

[4] Specifically, Hartz contends that the case, *Beacon Prop. Mgmt., Inc. v. PNR, Inc.*, 785 So. 2d 564 (Fla. 4th DCA 2001), required plaintiffs bringing claims under the Florida Deceptive and Unfair Trade Practices Act to demonstrate that the defendant had a custom and practice of engaging in deceptive acts against individuals other than the subject plaintiff. It bears mentioning that the Florida Supreme Court reversed *PNR* on March 13, 2003, well after Hartz had obtained the vehicle records. *See PNR, Inc. v. Beacon Prop. Mngmt.*, 842 So. 2d 773 (Fla. 2003).

14

(2) Hartz obtained a large number of names, most of whom never received a Custom and Practice letter; and (3) Thomas' information was used, without his express consent, to assemble and send out a marketing letter. The district court held that Thomas failed to create a genuine issue of material fact as to "a purpose not permitted." We agree.

First, as expressed by the district court, Thomas' assertion that Hartz did not specify which cases gave rise to the Custom and Practice letters is not a genuine issue of material fact when Thomas, himself, *never requested* such information from Hartz. Thomas was not in a position to be passive; it was incumbent upon him to come forward with some evidence showing that the litigation clause did not apply, which he failed to do. *Id*.

Second, as the district court rightly determined, the fact that many records were retrieved, but only a comparatively small number were used for Custom and Practice letters did not, by itself, raise a genuine issue of material fact as to whether the litigation clause applied. By affixing significance solely to the number of records relating to letters sent out, Thomas overlooked that Hartz's initial review of the total amount of records is just as much tied to "investigation in anticipation of litigation" as the eventual sending out. Thomas failed, however to discredit, or even address, the initial review.

15

Third, Thomas attempted to argue that Hartz's use of the information was not for a litigation purpose, but rather for the purpose of sending Thomas a marketing letter. Thomas did not produce such a letter and, at deposition, Thomas testified that he was "less than fifty-percent" or "fifty-percent" certain that he actually received a letter:

> Q: How sure are you that you received the letter from the Hartz company?
> A: I would say less than 50 percent. 50 percent, somewhere around there. You could flip a coin probably would be about right.

(D.E. 336 at 13.)

Further, Thomas attested that if he did receive a letter, he received it in June of 2000. *Id*. Hartz pointed out that such a letter, if received, could not be relevant to this case as it was undisputed that it did not request the information from the department of motor vehicles until 2002. *Id*. The district court correctly determined that this evidence was insufficient to raise a genuine issue of material fact. *See Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004) ("A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment."). On the basis of the evidence before the district court, we find no error in the decision to grant summary judgment.[5]

---

[5] Thomas also argues that a particular excerpt from Hartz's deposition indicates a "second ulterior motive" for obtaining the vehicle records; i.e., they were obtained for the purpose of creating a database of witnesses for prospective, not-yet-filed litigation—as opposed to currently

**B. The District Court's Denial of the Motion to Compel**

In his First Request for Production, Thomas requested "all letters sent by [Hartz] to residents of Miami-Dade County offering to review documents . . . received in connection [with] the purchase or lease of a new vehicle." (D.E. 49 at 10.) Thomas asserts that this request covered Hartz's Custom and Practice Letters. Hartz objected on grounds of overbreadth, relevance, retaliation, work product, and attorney-client privilege. Upon Thomas' Motion to Compel, the district court declined to order the production of all one-thousand Custom and Practice Letters. (D.E. 164 at 3.) At the hearing on the motion, it became clear that a copy of one of the Custom and Practice letters was already in discovery (D.E. 173 at 49, 61), and counsel for Hartz provided a copy of that letter to both counsel for Thomas and the court. (*Id*.) Because the Custom and Practice letters related to the obtainment of witnesses in ongoing lawsuits against automobile dealerships, the district court expressed concern that the letters were covered by the work product privilege. *See* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation

---

pending cases. Our review of the record reveals that Thomas did not raise this particular argument below and, as such, the argument is waived. *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998). Nonetheless, the argument is without merit. The litigation clause refers to investigation *in anticipation* of litigation. Thus, even if the accumulation of potential witnesses related, in part, to certain cases not yet filed, we do not see how pre-suit investigation can be considered per se inapplicable to the litigation clause.

of litigation or for trial by or for another party . . . .").  Specifically, the district court stated: "a letter [sent] out to someone who is involved in the lawsuit saying, 'we are looking for witnesses who were . . . defrauded by this car dealership because I'm representing Joe Smith,' that might be work product."  (D.E. 173 at 61.)[6]  Counsel for Thomas then stated: "I agree with that" and proceeded to address a different matter.  (*Id*. at 61-62.)  The issue was not revisited prior to the court's ultimate denial of Thomas' motion to compel the Custom and Practice letters.

Our standard of review is abuse of discretion.  *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1466 (11th Cir. 1984) (per curiam).  "[W]hen employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004).

---

[6] Three copies of the Custom and Practice Letter in the record follow this general form stated by the district court.  (D.E. 269 at Ex. D, Bates 640, 885, 1095.)  That is, the letters' prefatory re: line provides the title of the related case and the introductory sentence states that the law firm "represents [name of plaintiff] in the above captioned matter and we are presently conducting the legal discovery process."  *Id*.  The letters go on to state the general allegations against the dealership and further explain that since the recipient purchased or leased a vehicle from the dealership at the same time as the plaintiff, the law firm would appreciate the opportunity to speak with the recipient "so as to further establish evidence of the custom and practice used at [the] dealership."  *Id*.  At the hearing, the court read out-loud the introductory line of the letter to emphasize the point that the letters referred to particular cases.  (D.E. 173 at 65.)

18

Thomas argues that any privilege Hartz had in the Custom and Practice letters was waived because Hartz relied on the letters in asserting that the litigation clause applied. Thomas contends that because the letters remained protected, he was prevented from adequately testing whether the litigation clause applied. We decline to address this waiver argument. Thomas did not raise it below in either his Motion to Compel (D.E. 49 at 5-7, 14) or at the hearing (D.E. 173 at 65).[7] Indeed, as set forth above, Thomas' counsel affirmatively agreed with the court's work product reasoning. Thomas cannot now argue that such reasoning was erroneous. *See Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998) ("Too often our colleagues on the district courts complain that the appellate cases about which they read were not the cases argued before them.").

Accordingly, we affirm.

AFFIRMED.

---

[7] The argument advanced by Thomas in his Motion to Compel and at the hearing was that Hartz waived the work product privilege by failing to produce a privilege document log. (D.E. 49 at 5-7; D.E. 173 at 65.)