[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10760
Non-Argument Calendar
_____

D.C. Docket No. 5:14-cv-00102-RS-GRJ

MATTHEW BARKER,

Plaintiff-Appellant,

versus

BAY COUNTY SHERIFF'S OFFICE,

Defendant,

W. FRANK MCKEITHEN,
ROBERT LEE GARRISON,
Individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(November 19, 2015)

Before ED CARNES, Chief Judge, TJOFLAT and WILSON, Circuit Judges.

PER CURIAM:

Robert Garrison, a deputy with the Bay County Sheriff's Department, used Florida's Driver and Vehicle Information Database (DAVID) to access information about Matthew Barker.  Barker sued Garrison and Garrison's boss, Sheriff Frank McKeithen, alleging among other things that Garrison and McKeithen violated his rights under the federal Driver's Privacy Protection Act (DPPA), 18 U.S.C. §2721 et seq., by accessing his information for an impermissible purpose.  The district court granted summary judgment to Garrison and McKeithen, concluding that Barker had not raised a genuine issue of material fact as to whether Garrison's use of DAVID had been for a legitimate law enforcement purpose.  That conclusion is correct.

The district court summarized the facts underlying this case as follows:

[Barker] alleges that in the summer of 2012 [he] found in his possessions certain items belonging to [ ] Garrison's wife from when [Barker] and M[r]s. Garrison dated nearly ten years earlier.  After [Barker] shipped the items to Mrs. Garrison, without an explanatory note or a return address, his mother, Ms. Parcell, received a call at her unlisted home phone directing her and [Barker] to stop contacting Mrs. Garrison.  The call was purportedly made by a local law enforcement officer, but [Barker] and his mother believe that the caller was [] Garrison.

Subsequent to receiving the phone call, in August 2013, [Barker] made a public records request and determined that [ ] Garrison had used [DAVID] to conduct inquiries regarding [Barker's] information six times on January 5, 2011, and January 6, 2011.

2

According to [Barker], [ ] Garrison had no legitimate law enforcement or official purpose for accessing [Barker's] or his mother's DAVID information in January 2011.  As support, [Barker] claims that neither of them lived in the jurisdiction [where] Garrison worked as a law enforcement officer.

On the contrary, [ ] Garrison alleges that on January 5, 2011, his wife, Rhonda, contacted him while on duty to advise him that she thought she had seen a person that looked like her former boyfriend, [ ] Barker.  Then, when she returned home, Mrs. Garrison saw a vehicle that resembled the last vehicle she knew [Barker] to drive parked across the yard from their home.  According to [ ] Garrison, his wife was terrified of [Barker].  Therefore, she asked him to contact the deputy, who was on duty in the zone in which they resided, to make a check of the neighborhood.

[ ] Garrison believed [ ] Barker was stalking or otherwise engaging in threatening behavior toward Mrs. Garrison, so [he] conducted an inquiry of the DAVID system on January 5, 2011 to ascertain [Barker's] physical description and the type of vehicle he drove.  According to [ ] Garrison, he communicated the information obtained to the deputy on duty in the zone where the Garrisons lived and asked that he check the area.  He repeated the DAVID inquiry the following morning, January 6, 2011, to confirm the information so it could be provided to the zone deputy for the following shift to check the area as well.  Although the checks were completed, the presence of [Barker] was never confirmed.

Barker v. Bay Cnty. Sheriff's Office, No. 5:14-cv-102-RS-GRJ, 2015 WL 300431,

*1–2 (N.D. Fla. Jan. 22, 2015).

Barker alleged that Garrison violated the DPPA by accessing his personal

information for an impermissible purpose, and that McKeithen, in his official

capacity as Garrison's boss, was vicariously liable for Garrison's DPPA

3

violations.[1]  Garrison and McKeithen moved for summary judgment.  In support of the motions, Garrison submitted a sworn affidavit attesting that he had accessed Barker's information on DAVID for a legitimate law enforcement purpose.  Barker opposed the motions, attaching to his response a copy of Garrison's affidavit, records documenting Garrison's use of DAVID to access Barker's information, and an unverified version of his complaint.

The district court granted summary judgment to Garrison and McKeithen.  It correctly noted that the DPPA allows the disclosure of DAVID information "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions," id. at *3 (citing 18 U.S.C. § 2721(b)(1)), and that the DPPA puts the burden on the plaintiff to show that the defendant obtained his personal information "for a purpose not permitted under the act," id. at *8 (quoting Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King and Stevens, P.A., 525 F.3d 1107, 1112 (11th Cir. 2008)).  None of Barker's supporting evidence, the court explained, carried that burden or rebutted Garrison's sworn statement about his permissible reasons for using DAVID.

---

[1] Barker's complaint contained two other counts not relevant to this appeal.  Count II alleged that, by accessing Barker's information on DAVID, Garrison had violated Barker's privacy rights as protected by the DPPA and the Fourth Amendment.  Count III alleged that McKeithen, in his official capacity, was vicariously liable for Garrison's alleged violations of Barker's privacy rights.  Barker does not argue that the district court erred in granting summary judgment to Garrison and McKeithen on either count, and "a legal claim or argument that has not been briefed before th[is] court is deemed abandoned and its merits will not be addressed." Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).

Barker maintains that Garrison's sworn account of events is not believable, but he hasn't identified evidence that would allow a reasonable jury to reach that conclusion. His whole argument is that Garrison lied about his reasons for accessing Barker's DAVID profile, and that Garrison's dishonesty is evidence that his real reason for accessing Barker's profile was improper. According to Barker, a jury could reasonably infer that Garrison lied in his affidavit because a normal person in Garrison's shoes would not respond to a frantic call from his spouse by pulling up information on DAVID and relaying it to the police. To adopt that particular argument, a reasonable jury would need at least some evidence suggesting that Garrison's response to his wife's call was, in fact, atypical. Barker hasn't provided any such evidence. He's offered only sweeping assertions and unsubstantiated conjecture that "most reasonable people would likely" not do what Garrison says he did upon receiving the call from his wife. Conjecture and conclusory statements won't defeat a properly supported summary judgment motion unless they're supported by specific facts. See Paylor v. Hartford Fire Ins. Co., 748 F.3d 1117, 1122 (11th Cir. 2014); Rodriguez v. Farrell, 280 F.3d 1341, 1352 n.20 (11th Cir. 2002). Because Barker hasn't identified any specific facts supported by admissible evidence showing that Garrison lied in his affidavit, he hasn't met his burden at summary judgment.

**AFFIRMED.**