**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

EDWARD F. MARACICH, individually
and on behalf of all others
similarly situated; MARTHA L.
WEEKS, individually and on behalf
of all others similarly situated;
JOHN C. TANNER, individually and
on behalf of all others similarly
situated,

　　　　　　*Plaintiffs-Appellants,*

　　　　　　v.

MICHAEL EUGENE SPEARS; MICHAEL
SPEARS, PA; GEDNEY MAIN HOWE,
III; GEDNEY MAIN HOWE, III, PA;
RICHARD A. HARPOOTLIAN; RICHARD
A. HARPOOTLIAN, PA; A. CAMDEN
LEWIS; LEWIS & BABOCK, LLP,

　　　　　　*Defendants-Appellees.*

No. 10-2021

Appeal from the United States District Court
for the District of South Carolina, at Spartanburg.
Henry M. Herlong, Jr., Senior District Judge.
(7:09-cv-01651-HMH)

Argued: December 8, 2011

Decided: April 4, 2012

Before DUNCAN, DAVIS, and WYNN, Circuit Judges.

Affirmed by published opinion. Judge Davis wrote the opinion, in which Judge Duncan and Judge Wynn joined.

---

## COUNSEL

**ARGUED:** Philip N. Elbert, NEAL & HARWELL, Nashville, Tennessee, for Appellants. Morris Dawes Cooke, Jr., BARNWELL, WHALEY, PATTERSON & HELMS, LLC, Charleston, South Carolina, for Appellees. **ON BRIEF:** James G. Thomas, W. David Bridgers, Elizabeth S. Tipping, NEAL & HARWELL, Nashville, Tennessee; Gary L. Compton, Spartanburg, South Carolina, for Appellants. E. Bart Daniel, Charleston, South Carolina, John B. White, Jr., HARRISON, WHITE, SMITH & COGGINS, P.C., Spartanburg, South Carolina, for Appellees; Curtis W. Dowling, BARNES, ALFORD, STORK & JOHNSON, LLP, Columbia, South Carolina, for Appellees Michael Eugene Spears and Michael Spears, PA; Craig E. Burgess, John W. Fletcher, BARNWELL, WHALEY, PATTERSON & HELMS, LLC, Charleston, South Carolina, for Appellees Gedney Main Howe, III, and Gedney Main Howe, III, PA; Charles E. Hill, TURNER PADGET GRAHAM & LANEY, P.A., Columbia, South Carolina, for Appellees Richard Harpootlian and Richard A. Harpootlian, PA.

---

## OPINION

DAVIS, Circuit Judge:

This appeal arises from the dismissal of all claims alleged in a putative class action complaint filed pursuant to the Driver's Privacy Protection Act of 1994 (DPPA or the Act), 18 U.S.C. §§ 2721-2725, which "regulates the disclosure of personal information contained in the records of state motor vehicle departments." *See generally Reno v. Condon*, 528

U.S. 141, 148 (2000) (holding the DPPA constitutional as a proper exercise of Congress' power under the Commerce Clause).

Appellees Michael E. Spears, Esq., Gedney M. Howe, III, Esq., Richard A. Harpootlian, Esq., and A. Camden Lewis, Esq., ("the Lawyers" or Appellees) are South Carolina attorneys who in 2006 and 2007 instituted several "group action" lawsuits in South Carolina state court against numerous car dealerships pursuant to the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"), S.C. Code Ann. § 56-15-10 *et seq.* They alleged that certain dealerships had collected unlawful fees from car buyers. Through requests submitted to the South Carolina Department of Motor Vehicles (DMV) under the state Freedom of Information Act, S.C. Code Ann. §§ 30-4-10 to -165 (FOIA), the Lawyers obtained "personal information" protected by the DPPA, *viz.*, the names, addresses, telephone numbers, and car purchase information of thousands of car buyers, from which they identified potential named plaintiffs in the Dealers Act group action.

Appellants Edward F. Maracich, Martha L. Weeks, and John C. Tanner ("the Buyers" or Appellants) are car buyers who received mailings from the Lawyers regarding the Dealers Act litigation. In 2009, individually and on behalf of a putative class of all others similarly situated, the Buyers sued the Lawyers in this action in the United States District Court for the District of South Carolina alleging that the Lawyers violated the DPPA when they obtained and used the Buyers' personal information without their consent in connection with the Dealers Act litigation.

On cross-motions for summary judgment in the district court, the Buyers argued that the liability of the Lawyers was established as a matter of law because the Lawyers had obtained their personal information for use in a mass solicitation which, without the Buyers' consent, is prohibited by the

DPPA. The Lawyers argued, to the contrary, that they obtained and used the Buyers' personal information for purposes that are permitted notwithstanding the absence of consent, most particularly, under the "litigation exception" to the DPPA's general prohibitions on the use of personal information. In a thorough opinion, the district court granted summary judgment in favor of the Lawyers, concluding that the Lawyers did not engage in prohibited solicitation but that, even if they did, their actions nonetheless satisfied the so-called "litigation" and "state action" exceptions to the statutory prohibitions under the DPPA, and therefore their actions comported with the requirements of the Act. The Buyers have timely appealed from the adverse judgment.

Having carefully considered the record and the parties' contentions, in light of the plain language, purpose, and overall structure of the DPPA, we affirm the judgment, albeit on reasoning differing somewhat from that of the district court. Specifically, we hold that the district court erred in ruling that the Lawyers did not engage in solicitation. Yet, the Lawyers indisputably made permissible use of the Buyers' personal information protected by the DPPA, here, for use "in connection with [litigation]," including "investigation in anticipation of litigation." 18 U.S.C. §2721(b)(4). Ultimately, the Buyers' damages claims asserted under the DPPA fail as a matter of law, notwithstanding the fact that the Buyers can identify a distinct *prohibited use* (mass solicitation without consent) that might be supported by evidence in the record. In short, where, as a matter of settled state law and practice, as here, solicitation is an accepted and expected element of, and is inextricably intertwined with, conduct satisfying the litigation exception under the DPPA, such solicitation is not actionable by persons to whom the personal information pertains.

## I.

The issues presented arise out of the process and circumstances surrounding the Lawyers' efforts to investigate, and in

due course to institute, claims cognizable in the Dealers Act litigation they filed in state court. Accordingly, we first set forth in some detail the facts and procedural history relevant to the state court litigation. We then proceed to describe the facts and procedural history of this action filed in federal district court. As the parties indicated in their cross-motions for summary judgment filed in the district court, the essential cardinal facts are undisputed.

### A.

In early June 2006 the Lawyers were contacted by several persons who complained that local car dealerships were engaged in unfair practices. The pursuit of these potential claims led the Lawyers to make the first of a series of FOIA requests to the South Carolina DMV. The requests indicated to the DMV that information was being sought "in anticipation of litigation," under the DPPA provision commonly referred to as the "litigation exception," which authorizes a state DMV to disclose drivers' and/or car owners' "personal information":[1]

> for use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

---

[1]Under the Act, "personal information" is defined as:

information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

18 U.S.C. § 2725(3).

18 U.S.C. § 2721(b)(4).

In the original FOIA request, Appellee Harpootlian explained to the DMV: "I have plaintiffs who have complained of certain conduct as a result of their transactions with car dealers, conduct which I believe to be a potential violation [of] state law. I am attempting to determine if this is a common practice, and am accordingly submitting this FOIA request." J.A. 206. The request was for information on "private purchases of new or used automobiles in Spartanburg County during the week of May 1-7, 2006, including the name, address, and telephone number of the buyer, dealership where purchased, type of vehicle purchased, and date of purchase." J.A. 206. Apparently satisfied that the litigation exception applied, the DMV provided the requested information.

About one month later, Harpootlian made a second FOIA request to the DMV. This request likewise invoked the litigation exception of the DPPA and extended the inquiry to purchases of new or used cars in Charleston, Richland, York, Lexington, and Greenville counties for the week of May 1-7, 2006. Again, the DMV provided the requested information.

It is undisputed that at the time of these first two FOIA requests (despite Harpootlian's reference to "plaintiffs who have complained of certain conduct") the Lawyers had not yet filed an action under the Dealers Act or otherwise. Just days after the second FOIA request, however (and presumably before it was answered), the Lawyers filed in state court a Dealers Act case referred to by the parties and the district court as the *Herron* litigation, alleging violations by 51 car dealerships.[2] The suit was filed on behalf of four named plain-

---

[2]The Dealers Act prohibits automobile dealerships from engaging in "any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of the parties or the public." S.C. Code Ann. § 56-15-40. The specific allegation in *Herron* was that dealerships deceptively

tiffs and "for the benefit of all others," J.A. 220; *see* S.C. Code Ann. § 56-15-110 (providing that "when such action is one of common or general interest to many persons or when the parties are numerous and it is impracticable to bring them all before the court, one or more may sue for the benefit of the whole, including actions for injunctive relief.").

Immediately following the filing of the complaint in *Herron*, various defendant dealerships filed motions to dismiss on the ground that they had not sold cars to any of the four named plaintiffs, who therefore lacked standing. With these motions pending, Harpootlian submitted a third FOIA request to the DMV in October 2006, again citing the litigation exception, in which he requested the personal information and types of vehicles purchased for people who bought cars from 328 listed dealerships between May 1 and May 14, 2006. Included on the list were those dealerships that had filed motions to dismiss for lack of standing in the *Herron* litigation. Again, the DMV complied with the request.

On October 31, 2006, the Lawyers filed an amended complaint in the *Herron* litigation, which added four named plaintiffs to the suit and increased the number of defendant dealerships from 51 to 324. As with the original complaint, defendant dealerships that had not engaged in transactions with any of the now eight named plaintiffs filed motions to dismiss for lack of standing. In all, more than 183 motions to dismiss were filed.

On January 3, 2007, the Lawyers mailed the first of another series of letters to the car buyers identified through the FOIA

grouped "administrative fees" on invoices with taxes and other required fees to mislead purchasers into believing that the charges were mandatory and non-negotiable. The suit requested permanent injunctive relief, disgorgement of all fees to all purchasers who paid them, double actual damages, litigation costs and attorney's fees, and punitive damages.

requests. The first letter was prefaced, just below the letter-head, with the phrase: **ADVERTISING MATERIAL**. J.A. 487. The letter stated, in its entirety:

We represent a group of consumers in a pending lawsuit arising from South Carolina car dealerships charging an add-on, often referred to as an "administrative fee," a "recording and processing fee," "closing fee," or "dealer documentation and closing fee." We believe that these fees are being charged in violation of South Carolina law.

We understand that you may have been charged one of these fees on your recent purchase of an automobile. **We obtained this information in response to a Freedom of Information Act request to the South Carolina Department of Motor Vehicles.**

**The exact nature of your legal situation will depend on facts not known to us at this time. You should understand that the advice and information in this communication is general and that your own situation may vary.** However, we would like the opportunity [to] discuss your rights and options with you in a free consultation. If you are interested in participating in the case or in a free consultation, please mail the enclosed postage paid card and we will contact you soon.

**You may wish to consult your lawyer or another lawyer instead of us. You may obtain information about other lawyers by consulting the Yellow Pages or by calling the South Carolina Bar Lawyer Referral Service at 799-7100 in Columbia or toll free at 1-800-868-2284. If you have already engaged a lawyer in connection with the legal matter referred to in this communication, you**

> **should direct any questions you have to that law-**
> **yer.**

J.A. 487 (emphases in original). The Lawyers filed a copy of the letter and a list of recipients' names and addresses with the South Carolina Office of Disciplinary Counsel, as required by South Carolina Rule of Professional Conduct 7.3, which regulates the solicitation of prospective clients. The emphasized text of the third and fourth paragraphs, and the prominent placement of the phrase "advertising material," complied with the provisions of Rule 7.3, as well. *See* S.C.R. Prof. Con. 7.3(d)(1), (2).

Later in January 2007, Harpootlian made two more FOIA requests of the DMV, seeking personal information of people who had purchased cars between June 1 and September 2, 2006, from an additional 31 dealerships. Then, Harpootlian submitted the final FOIA request on January 23, 2007, requesting personal information and dealership information for all purchasers of new and used cars during September 1-14, 2006, and December 10-24, 2006. The three requests again cited only the litigation exception to the DPPA and all were granted by the DMV.

On the same day as the last FOIA request, the Lawyers mailed a second round of letters to car buyers whose personal information had been disclosed by the DMV. These letters, which differed from the first mailing only by minor format-ting changes, were sent to 1,283 people. Meanwhile, in state court, various defendant dealerships filed a Joint Memoran-dum to Dismiss, again asserting that "for every named Dealer, there had to be a corresponding named Consumer who was a customer." Appellees' Br. 8; J.A. 666.

In March 2007, the Lawyers mailed two more rounds of letters to a total of 21,116 purchasers identified through the FOIA requests. Shortly thereafter, counsel for some of the dealership defendants in *Herron* wrote to the Lawyers, assert-

ing that the FOIA requests and subsequent mailings violated a state law generally prohibiting certain solicitations based on information obtained from state agencies, but not mentioning the DPPA. The Lawyers responded by invoking the DPPA and reiterating that the litigation exception to the DPPA applied to their FOIA requests. The Lawyers further asserted that the letters mailed to car buyers had been made to conform to the requirements of a client solicitation under the South Carolina lawyer disciplinary rules only because "we knew that your group would try to see if we had met the requirements of the Disciplinary Counsel. In an abundance of caution we followed the requirements." J.A. 337. The Lawyers asserted that no violation of state law regarding prohibited solicitation had occurred because "we are not marketing or selling a consumer product or service." *Id.*

In March 2007, Appellant Maracich received one of the letters mailed to car buyers by the Lawyers. While his personal information had been disclosed to the Lawyers because he was one of many buyers from a particular dealership, Maracich also happened to be the Director of Sales and Marketing at that dealership.

Two months later, the Lawyers sent two rounds of letters to a total of 11,547 car buyers identified from the FOIA requests. Appellants Martha Weeks and John Tanner allege that they received letters from the Lawyers around this time. According to Tanner, after receiving the letter he called Harpootlian to find out how his contact information was obtained. During the conversation, he was subjected to "an aggressive sales pitch" to "sign up as a client for a lawsuit," and was told that he could receive "two to three times" the fee amount he had paid at purchase. J.A. 1448. Tanner further avers that during this conversation, Harpootlian never asked about the circumstances of his purchase.

In June 2007, in response to continuing disputes over standing in the *Herron* litigation, the Lawyers moved to further

amend their Amended Complaint to join nearly 250 additional named plaintiffs who had come forward in response to the mailings. The dealerships opposed the motion, now arguing that the proposed additional plaintiffs had been contacted in violation of the DPPA. The state court ultimately denied the motion to amend, and ruled that the named plaintiffs had standing only as to dealerships with which they had engaged in transactions.[3]

Consequently, in September 2007, the claimants who had been denied joinder in *Herron* brought independent actions in state court, which were then consolidated with *Herron*. All claims against dealerships without a corresponding plaintiff-purchaser were dropped in the interest of foreclosing any further controversy over standing.

Addressing another Motion to Substitute a plaintiff, the state court in the *Herron* litigation in October 2009 reiterated a number of key rulings in the case up to that point: (1) the plaintiffs had "a substantive statutory right . . . to proceed 'for the benefit of the whole'. . . 'without a requirement that the plaintiff plead and prove the class certification requirements under S.C.R.P. Rule 23'"; (2) "each named Plaintiff had standing to sue for himself and in a representative capacity for other[s] against the Defendant that transacted business with that named Plaintiff"; (3) "This is not a Rule 23, SCRP class action. This is a group representative action under the Dealers Act . . . . Nothing in the Dealers Act requires the Plaintiffs to move for class certification"; and (4) "Plaintiff's counsel, as private attorneys general, from the inception of this litigation have represented the public interest in attempting to regulate allegedly unfair practices . . . and therefore represent all those affected by such practices." J.A. 1354, 1355, 1357.[4]

---

[3]The court further ruled, however, that the existing plaintiffs could acquire standing as to any defendant that was shown by discovery to have joined a conspiracy to charge improper fees.

[4]The long-pending *Herron* litigation has had something of a tortuous journey. When the trial court denied the dealerships' motion to compel

B.

Nearly three years after the *Herron* litigation commenced, the Buyers (who are represented in this case by the same counsel who represents several of the dealerships in the *Herron* litigation) filed the instant putative class action against the Lawyers, alleging violations of the DPPA related to the acquisition and use of the Buyers' personal information from DMV records through the Lawyers' FOIA requests. The Complaint asserted damages claims under 18 U.S.C. § 2724(a). Specifically, the Buyers alleged that the Lawyers unlawfully obtained personal information as defined by the DPPA, 18 U.S.C. § 2725(3), *see supra* n.1, by knowingly requesting, "under false pretenses," information for the prohibited use of solicitation, "and then using the Personal Information for the statutorily prohibited purpose of mailing lawyer advertising and solicitation materials to Plaintiffs." J.A. 19. The Buyers sought liquidated damages of $2,500 for each instance of unlawful conduct, compensatory and punitive damages, a per-

---

arbitration, the dealerships took an interlocutory appeal. The Supreme Court of South Carolina granted certification, brought up the appeal from the Court of Appeals, and reversed in part and affirmed in part the trial court's ruling, concluding, ultimately, that although the arbitration clause at issue was otherwise enforceable, its prohibition on class arbitration violated the public policy of South Carolina. *See Herron v. Century BMW*, 693 S.E.2d 394 (S.C. 2011). Upon the filing by the dealerships of a petition for *certiorari*, the United States Supreme Court granted the writ, vacated the judgment, and remanded the action to the South Carolina Supreme Court for reconsideration in light of *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740 (2011) (holding that California state law rule that prohibited a waiver of class arbitration in a retail sales contract was preempted by the Federal Arbitration Act). Upon the South Carolina Supreme Court's reconsideration of *Herron* after the remand, the court held that the dealerships had forfeited the argument that the class arbitration bar under the public policy of South Carolina was preempted by the Federal Arbitration Act by failing to raise it in the trial court or before the South Carolina Supreme Court in the interlocutory appeal. *Herron v. Century BMW*, 719 S.E.2d 640 (S.C. 2011).

manent injunction, attorney's fees and costs, and interest on the monetary awards.[5]

The Lawyers promptly moved to dismiss all counts in the Complaint, arguing (among other issues) that the Buyers' personal information was obtained for the permissible use provided in 18 U.S.C. § 2721(b)(4), the litigation exception, and in 18 U.S.C. § 2721(b)(1), the state action exception.[6] The

---

[5]Section 2724 provides:

(a) Cause of action.—A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

(b) Remedies.—The court may award—

(1) actual damages, but not less than liquidated damages in the amount of $2,500;

(2) punitive damages upon proof of willful or reckless disregard of the law;

(3) reasonable attorneys' fees and other litigation costs reasonably incurred; and

(4) such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2724. *See Condon*, 528 U.S. at 146-47 (stating that the § 2724(a) cause of action is for knowingly obtaining, disclosing, or using personal information "for a use other than those specifically permitted by the DPPA"). The Buyers alleged four separate counts in their Complaint, all arising under the DPPA, against all four of the Lawyers (and their respective law firms), and seemingly resting on the following separate theories: (1) willful violations of the DPPA; (2) negligent violations of the DPPA; (3) respondeat superior liability, generally; and (4) concert of action, generally.

[6]The so-called "state action" exception under the DPPA provides as follows:

(1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, *or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.*

motion also argued that the Lawyers "already represented" the people they had contacted using the DMV information by virtue of the group action under the Dealers Act, and the attorneys had moreover been "obligated" to find and contact buyers to ensure that the suit was not dismissed on standing grounds as to certain members of that group.

In addition, the Lawyers noted that the lead counsel for the Buyers in the instant case also represented several of the defendant dealerships in *Herron*. They argued that this relationship created a conflict of interest, and that representation of the Buyers in federal court by the dealerships' attorneys should be prohibited in any event because to the extent that the Buyers were members of the plaintiff group in *Herron*, they were already represented by the Lawyers. In sum, the Lawyers charged that the DPPA litigation was an "obstructionist legal tactic," designed to undermine the *Herron* litigation. J.A. 158.

The district court rejected each of the Lawyers' arguments for dismissal. The court ruled, in pertinent part, that the existence of an attorney-client relationship between the Lawyers and buyer group members in *Herron* was a disputed factual issue and thus the litigation exception to the DPPA did not apply at the motion-to-dismiss stage, and that the state action exception did not apply because the Lawyers, though acting as "private attorneys general" in a group action context, were not for that reason alone agents of the government. Furthermore, the court admonished that any assertion regarding the impropriety of the representation of the class should be expressed in a motion to disqualify counsel on the ground of conflict of interest.

18 U.S.C. § 2721(b)(1) (emphasis added). The Lawyers argued that, in their role as "private attorneys general" under the Dealers Act, the state action exception applied to their FOIA requests leading to, and facilitating, the *Herron* litigation.

In their Answer and Counterclaim, the Lawyers asserted, in effect, that this action was proof of the sports aphorism that the best defense is an aggressive offense: "This is now clearly seen as a multi-million dollar-fear lawsuit designed to interfere with and discover the legal bases of an underlying lawsuit involving consumers against car dealers and their illegal charging of secret fees. It is designed to chill, if not kill, an ongoing legitimate lawsuit." J.A. 175. After alleging a host of affirmative defenses, the Lawyers requested by way of their counterclaim a declaratory judgment that the DPPA's solicitation provision does not apply to permissible litigation-related uses of personal information. Such a construction was proper, they argued, because "Congress intended for lawyers to have unfettered access and use of DMV information for use in litigation." J.A. 189.

Discovery commenced, haltingly, but on January 25, 2010, the district court addressed the Lawyers' Motion to Stay, which argued that discovery would involve documents from the *Herron* litigation that fall within the attorney-client and work product privileges, and should therefore be stayed while that case proceeded. Agreeing that there were "numerous privilege issues" at stake, the district court ordered a six-month stay in the federal DPPA action, suspending discovery. J.A. 196.

Just weeks later, the Buyers moved to lift the stay to undertake class certification discovery under Fed. R. Civ. P. 23. Following a hearing, during which the Lawyers "stated that they could file a motion for summary judgment without the need for any discovery," J.A. 203, and the Buyers stated that discovery would likewise be unnecessary to prepare their response to such a motion and their own motion, the district court denied the motion to lift the stay with the expectation that summary judgment proceedings would proceed.

The Buyers and the Lawyers promptly filed cross-motions for summary judgment only three days apart; the former

sought a partial summary judgment on liability only, and the latter sought judgment in full as to all of the Buyers' claims, relying on several theories. The Lawyers made essentially the same arguments they had asserted in their unsuccessful Motion to Dismiss.[7] This time, however, the district court was receptive.

The court first addressed the Buyers' argument that the Lawyers had provided no sworn statements as to their subjective intent regarding the FOIA requests and car buyer mailings, and relied instead solely on the *Herron*-related pleadings and other documents to establish the purpose of their conduct in seeking the Buyers' personal information. The court rejected the Buyers' argument, noting that the Buyers were themselves relying on the documents related to the *Herron* litigation in support of *their* motion, and that the *Herron*-related filings were of unquestioned authenticity, legally sufficient, and ultimately, highly probative regarding the issues before the court; the documents were therefore a proper basis on which to resolve the motions for summary judgment.

Addressing the somewhat unusual nature of the Lawyers' relationship to the group of buyers in *Herron*, the court explained that under the state court ruling in the *Herron* litigation, there is a "substantive right to representation for the 'benefit of the whole'" provided by the Dealers Act, and therefore the Lawyers' status in the *Herron* litigation was "distinct yet analogous to attorney representation in a class action under [South Carolina's class action provision]." J.A. 1475. In light of the unique representative function under group action, the Lawyers had at least a fiduciary duty to all buyers affected by the Dealers Act violations alleged. As a

---

[7]The Buyers' motion urged the court to rule that acquisition and use of information under the DPPA must both (1) meet all the requirements of permissibility and (2) avoid any impermissible categorization. The district court addressed the cross-motions together, as discussed above.

result, the court ruled, "The [Lawyers] did not solicit unnamed buyers as a matter of law." J.A. 1477.[8]

The court then ruled broadly that even where the acquisition and use of personal information does fall within the solicitation prohibition of the DPPA (for want of the express consent of the persons to whom the personal information pertained), such conduct is nonetheless lawful under the DPPA in the absence of consent if it also comes within one of the permitted use provisions. In this regard, the court rejected the Buyers' reliance on the reasoning of *Pichler v. UNITE*, 542 F.3d 380 (3d Cir. 2008), and *Wemhoff v. District of Columbia*, 887 A.2d 1004 (D.C. Ct. App. 2005), and followed instead, as urged by the Lawyers, the Eleventh Circuit's reasoning in *Rine v. Imagitas, Inc.*, 590 F.3d 1215 (11th Cir. 2009).

The court specifically ruled that the acquisition and use of the car buyers' personal information before the *Herron* action was filed met the "investigation in anticipation of litigation" permitted use of 18 U.S.C. § 2721(b)(4), and that the acquisition and use of the car buyers' personal information after the commencement of that action were "in connection with [a] civil . . . proceeding," as also permitted by the litigation exception. Despite its rejection of the argument when it was raised in the earlier motion to dismiss, the court also ruled that the Lawyers' conduct was lawful under the state action exception of the DPPA because their role in *Herron* was adequately analogous to that of a state attorney general. Summary judgment was therefore granted in favor of the Lawyers and all the Buyers' claims were dismissed with prejudice, as was the Lawyers' counterclaim, as moot.

---

[8]Concluding that "the undisputed facts" indicated permissible uses of the information, J.A. 1491, and noting that compliance with the state solicitation rules in the wording of the FOIA requests was reasonable and did not make the letters solicitation per se, the court concluded that there was no plausible basis on which to find that the DPPA had been violated.

## II.

The Buyers timely appealed and now argue before us that the district court erred in its ruling on three issues, namely, in concluding that: (1) as a matter of law, the Lawyers' conduct did not constitute solicitation under the DPPA; (2) conduct in obtaining and using personal information under the DPPA is lawful and non-actionable, even where that conduct also evidences an impermissible use; and (3) the Lawyers' conduct came within either the litigation or state action permissible use exceptions of the DPPA. We agree with the Buyers that the district court erred in concluding that no solicitation within the contemplation of the DPPA was shown. Nevertheless, we affirm the district court's determination that despite the evidence of non-consensual solicitation, the summary judgment record establishes as a matter of law that the Lawyers' conduct in obtaining and using the Buyers' personal information fell within a permissible use under the DPPA, the litigation exception, and that, under the circumstances of this case, the Buyers' claims fail as a matter of law because the solicitation was integral to, and inextricably intertwined with, conduct clearly permitted by the litigation exception.[9]

## A.

We review the grant of summary judgment *de novo*. *News & Observer v. Raleigh-Durham Airport*, 597 F.3d 570, 576 (4th Cir. 2010). As provided by Fed. R. Civ. P. 56(c)(2), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

---

[9]In light of our holding that the litigation exception applied to the Lawyers' conduct and forecloses the Buyers' claims, we have no occasion to review the district court's alternative ruling that the state action exception also applies under the circumstances of this case.

Facts are "material" when they might affect the outcome of the case, and a "genuine issue" exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party. The moving party is "entitled to judgment as a matter of law" when the nonmoving party fails to make an adequate showing on an essential element for which it has the burden of proof at trial. "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (internal quotations omitted). To overcome a motion for summary judgment, however, the nonmoving party "may not rely merely on allegations or denials in its own pleading" but must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

*News & Observer*, 597 F.3d at 576 (some citations omitted).[10] Similarly, "[t]he district court's analysis of the statutes in the instant case presents questions of law which we review *de novo*." *WLR Foods, Inc. v. Tyson Foods, Inc.*, 65 F.3d 1172, 1178 (4th Cir. 1995), *cert. denied*, 516 U.S. 1117 (1996).

---

[10]In their statement of the Standard of Review, the Buyers briefly raise the argument that "a court cannot, as in this case, grant summary judgment while denying the nonmoving party discovery of documents or the right to take witness or party depositions regarding facts deemed material under its interpretation of the law." Appellants' Br. 21-22. The record indicates quite clearly, however, that the Buyers agreed they would not need discovery to file an adequate opposition to a motion for summary judgment, if it involved only the same arguments offered in the motion to dismiss. J.A. 201-02. The two motions did ultimately rely on the same arguments, based on references to the undisputed facts (arising from the existence of readily-available documents whose authenticity was unquestioned) from *Herron*. Because the Buyers waived their right to discovery before the district court entertained the motion for summary judgment, the district court did not abuse its discretion in adjudicating the motion on the record presented by the parties without the benefit of full discovery.

B.

The first issue before us concerns construction of the word "solicitation," as it appears in the DPPA's list of enumerated "permissible uses" of DMV information: "Personal information . . . may be disclosed . . . for bulk distribution for surveys, marketing, or solicitations if the State has obtained the express consent of the person to whom such personal information pertains." 18 U.S.C. § 2721(b)(12). The district court ruled that the mailings by the Lawyers were not solicitations for the purposes of the DPPA as a matter of law because of the Lawyers' actual, if inchoate, representative relationship to all members of the *Herron* group of consumers. The Buyers argue this ruling was erroneous for two reasons: (1) the plain, express language of the letters — which conformed to South Carolina's requirements for solicitation by attorneys, and were therefore labeled clearly "ADVERTISING MATE-RIAL" — indicates that they were, in fact, solicitations, and (2) the Lawyers did not have an attorney-client, or representative, relationship with the contacted buyers and thus communication with these people was solicitation insofar as the recipients were potential clients, not actual clients.

In essence, the Buyers are arguing for an objective standard for defining solicitation: the letters looked like solicitations, conformed to the requirements for solicitations, and they accomplished the aim of solicitations, i.e., finding potential named plaintiffs for the *Herron* litigation. In ruling that the letters were not solicitations, the district court instead applied a subjective standard, taking into primary account the motives of the Lawyers and the context in which their requests were made.

Without question, the South Carolina solicitation regulations for "Direct Contact with Prospective Clients," to which these letters conformed, are explicitly designed to protect recipients from overtures that might be overwhelming, confusing, misleading, or against their best interests. *See* S.C.R.

Prof. Con. 7.3, cmts. 1, 5, 8; *see also Bates v. State Bar of Arizona*, 433 U.S. 350, 383 (1977) (noting the acceptability of restrictions on legal advertising to avoid misleading prospective clients). These concerns focus on the perception of the reader or listener, not the intentions of the attorney or the particular context in which the conduct occurs. In our view, an objective standard best protects these interests because it prevents the dissemination of material that is likely to cause confusion or misguided reliance.

The Lawyers explain their compliance with the South Carolina Rules of Professional Conduct as simply "an abundance of caution," rather than an indication that the letters constituted solicitation in fact. But the Lawyers' contention proves too much; caution was needed because, viewed objectively, the mailings constituted "solicitations." Their argument that their role in *Herron* as ostensible private attorneys general, allegedly ratified by the state court rulings described above, conferred the rights and duties of counsel on them and therefore any communication with group members (named or unnamed in the suit at the time) is unpersuasive. There is no inherent inconsistency between their role, even if true, as private attorneys general, on the one hand, and their need to "solicit" potential clients, on the other hand. By denoting the letters as "advertising material," a reasonable recipient would almost certainly have understood the message to be a solicitation from a lawyer.

Even more important than the boilerplate solicitation language, the letter encouraged recipients to respond in order to learn about their rights and "to participate in the case." J.A. 487. No mention was made of an investigation into certain practices other than the implicit suggestion of investigation during a "free consultation." J.A. 487. The letters also failed to indicate to recipients that they may already be *de facto* clients of the Lawyers, that is, persons whose interests were already protected by the senders. In short, the Lawyers pre-

sented their communication as solicitation, whether they believed it (then or now) to be or not.

Thus, we apply an appropriately consumer-protective objective standard for construing the DPPA term "solicitation." Accordingly, and consistent with the common understanding of the meaning of the word as targeted lawyer advertising aimed at affording representation to potential clients, *see, e.g.*, *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 476 (1988) (evaluating constitutional propriety of state's ban on "targeted, direct-mail solicitation," and noting that while such solicitation "presents lawyers with opportunities for isolated abuses or mistakes, . . . . [t]he State can regulate such abuses and minimize mistakes through far less restrictive and more precise means [than a total ban], the most obvious of which is to require the lawyer to file any solicitation letter with a state agency, . . . giving the State ample opportunity to supervise mailings and penalize actual abuses"); *see also Ficker v. Curran*, 119 F.3d 1150 (4th Cir. 1997), we are constrained to reject the district court's conclusion that, as a matter of law, the Lawyers were not engaged in solicitation when they contacted otherwise unknown car buyers they had identified through their FOIA requests.

As the district court correctly recognized, however, this determination is not dispositive. As we explain within, although the record supports the Buyers' contention that the Lawyers engaged in solicitation, i.e., that they induced the DMV to disclose the Buyers' personal information in the absence of the Buyers' consent, because the solicitation was entirely consistent with state law, was integral to, and was, indeed, inextricably intertwined with the Lawyers' permissible use of the Buyers' personal information pursuant to the litigation exception, the Buyers' claims fail as a matter of law.

## C.

The Buyers' second argument is equally as straightforward as their first but far less persuasive. They contend that the dis-

trict court erred in ruling that, as a matter of law, the non-consensual use of personal information for solicitation is nonetheless non-actionable under 18 U.S.C. § 2724, *see supra* n.5, if the solicitation is sufficiently tied to a permissible use under the litigation exception. In other words, and more generally, the Buyers urge a theory of DPPA liability in which *any* impermissible use of personal information, e.g., solicitation absent consent, would violate the statute (and support a damages action), even if, concomitantly, the personal information is put to a permissible use, i.e., in litigation.

For the reasons explained below, without undertaking to lay down a rule applicable in all future cases, we are persuaded that the most rational resolution of the manifest tension between the solicitation and litigation exceptions under the DPPA compels us to reject the Buyers' absolute rule.

There is no Fourth Circuit precedent teaching how to reconcile, or read harmoniously, the permissible use provisions of the DPPA, and indeed, the limited number of cases among our sister circuits reflect that the law in this area is in a state of continued evolution. *See generally*, Deborah F. Buchman, *Annotation, Validity, Construction, and Application of Federal Driver's Privacy Protection Act, 18 U.S.C.A. §§ 2721 to 2725*, 183 A.L.R. Fed. 37 (2011).

That said, we note that the Eleventh Circuit has provided a rather expansive sweep to the litigation exception of the DPPA. In *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*, 525 F.3d 1107 (11th Cir. 2008), the court affirmed a summary judgment in favor of a law firm that had obtained the plaintiff's personal information from the Florida Department of Highway Safety and Motor Vehicles. The defendant lawyer had obtained the plaintiff's personal information (together with that of 24,000 other Florida drivers)

> because the automobile dealers he was litigating
> against were asserting that plaintiffs needed to plead

and prove multiple acts of deceptive and unfair trade practices to state a deceptive and unfair trade practice claim under Florida law . . . . [T]he information was [then] used to send one-thousand "Custom and Practice" letters, which aimed at obtaining evidence showing a custom and practice of deceptive acts engaged in by dealerships.

*Id.* at 1114 (footnote omitted). The court rejected the plaintiff's argument that the lawyer's distribution of "Custom and Practice" letters to certain car buyers supported a claim based on impermissible use, i.e., prohibited solicitation. Specifically, the court reasoned:

as the district court rightly determined, the fact that many records were retrieved, but only a comparatively small number were used for Custom and Practice letters did not, by itself, raise a genuine issue of material fact as to whether the litigation clause applied. By affixing significance solely to the number of records relating to letters sent out, [plaintiff] overlooked that [defendant's] initial review of the total amount of records is just as much tied to "investigation in anticipation of litigation" as the eventual sending out. [Plaintiff] failed, however to discredit, or even address, the initial review.

*Id.* at 1115. Moreover, in considered *dicta*, the court gave short shrift to the plaintiff's complaint that the attorney's "ulterior motive" in obtaining the DPPA personal information was for use in potential *future* litigation.[11] We can discern no

---

[11]The court stated:

Thomas also argues that a particular excerpt from Hartz's deposition indicates a "second ulterior motive" for obtaining the vehicle records; i.e., they were obtained for the purpose of creating a database of witnesses for prospective, not-yet-filed litigation—as opposed to currently pending cases. Our review of the record

inconsistency between the evident Congressional purpose in the enactment of the DPPA of protecting privacy and the kind of pragmatic approach to lawyer access to protected personal information revealed by the Eleventh Circuit's understanding of the litigation exception.

Consistent with its willingness to afford the litigation exception a pragmatic scope as reflected in *Thomas*, the Eleventh Circuit has also shown its willingness to adopt a pragmatic reconciliation of the tension arising from the DPPA's prohibition (absent express consent) on solicitation when solicitation is inextricably intertwined with a permitted use under 18 U.S.C. § 2721(b). *See Rine v. Imagitas*, 590 F.3d 1215, 1226 (11th Cir. 2009) (holding that non-consensual solicitation that is inextricably intertwined as a matter of state statutes with the state action exception is not actionable).

In *Rine*, in which the Judicial Panel on Multidistrict Litigation consolidated actions brought by drivers in several states, the state of Florida contracted with a marketing enterprise to mail driver's license renewal information. *Id.* at 1219. Pursuant to its agreement with the state, and consistent with prior revenue-generating schemes pursued by the state and several Florida counties, the contractor included in the driver's license renewal mailings focused commercial advertising materials to such drivers, based on information contained in and derived from DPPA-protected personal information. *Id.* at 1219-20. Some drivers sued, among others, the contractor, as

---

reveals that Thomas did not raise this particular argument below and, as such, the argument is waived. *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998). Nonetheless, the argument is without merit. The litigation clause refers to investigation in anticipation of litigation. Thus, even if the accumulation of potential witnesses related, in part, to certain cases not yet filed, we do not see how pre-suit investigation can be considered per se inapplicable to the litigation clause.

525 F.3d at 1115 n.5.

the Buyers here have sued the Lawyers, alleging a violation of the DPPA insofar as the state had failed to obtain their consent for the solicitation. In opposing the plaintiffs' claims, the contractor relied on the state action exception, arguing that it was performing functions on behalf of the state (which exercised final approval over the advertising material).

In sustaining the district court's legal conclusion that the state action exception foreclosed the plaintiffs' claims, the Eleventh Circuit reasoned that "nothing in the DPPA suggests that the (b)(12) [solicitation] exception alters the scope or meaning of the separate and independent [state action] exception found in subsection (b)(1)." That is, where two provisions overlap but "both apply to situations not governed by the other," they "both must be given effect unless they 'pose an either-or proposition.'" *Id.* at 1226 (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 244, 253 (1992)). The *Rine* court reasoned that unlike *HCSC-Laundry v. United States*, 450 U.S. 1 (1981), where as between two potentially applicable statutory provisions one was "general" and the other "specific," the DPPA provisions are equally specific. *Rine*, 590 F.3d at 1226. They are, moreover, "not mutually exclusive, meaning any one or more of them may be applicable to a given situation." *Id.* This reasoning commends itself to us.

The Buyers contend that the Eleventh Circuit's resolution of the tension between the solicitation prohibition and the permitted uses spelled out in § 2721(b) that do not require consent is misguided and urge us to adopt, instead, the holding of the Third Circuit in *Pichler v. UNITE*, 542 F.3d 380 (3d Cir. 2008) ("*Pichler V*" per the Appellants).[12] In *Pichler V*, the

---

[12]*Pichler v. UNITE*, a class action concerning a union's use of DMV information to contact employees for organizing drives and to pursue impact litigation, has generated at least seven opinions to date. The Third Circuit's numbering for the series of opinions related to the case does not match the numbering set out in the Appellants' Brief; the Appellants mark a 2004 decision denying a motion to dismiss as "*Pichler I*," while the Third Circuit starts its count with a subsequent 2005 opinion certifying the class. *Compare Pichler*, 542 F.3d at 385, *with* Appellants' Br. 30 n.5. To minimize confusion between the briefs before this court and our opinion, we will follow the Appellants' numbering.

court affirmed summary judgment of liability against the union defendants in a DPPA case, agreeing with the lower court that "[t]he [DPPA] contains no language that would excuse an impermissible use merely because it was executed in conjunction with a permissible [use]." *Id.* at 395 (citing *Pichler v. UNITE*, 446 F. Supp. 2d 353, 367 (E.D. Pa. 2006) ("*Pichler III*"). The lower court had reasoned that because the DPPA imposes liability for acquisition and use of information "for a purpose not permitted," *any* impermissible use was actionable, regardless of other circumstances supporting a finding that a permissible use provision was also satisfied. *Pichler III*, 446 F. Supp. 2d at 367. But we find that *Pichler* is plainly distinguishable from the facts and circumstances in the case at bar.[13] There, the union conceded that it obtained

---

[13]The Buyers also seek solace in *Wemhoff v. District of Columbia*, 887 A.2d 1004 (D.C. Ct. App. 2005), in which a lawyer attempted to compel disclosure of DMV information about drivers ticketed for red light camera infractions at a particular intersection, when he did not yet represent any affected person and had no on-going "investigation" of red-light cameras beyond his attempt to find out the identities of those who had been ticketed. The *Wemhoff* court sustained the agency's refusal to make the disclosure, finding the request was for use in solicitation rather than in anticipation of litigation, and was therefore subject to the express consent requirement of section (b)(12).

*Wemhoff* held that "in anticipation of litigation" meant use for "the type of background work or search for material which would determine, substantively, whether one has a viable theory of litigation, or enough of a basis to avoid a motion for sanctions that a frivolous lawsuit has been filed." 887 A.2d at 1011-12. This test for attenuation was adopted from the district court's opinion in *Pichler*, which reasoned that the exception applied only where defendants could prove "(1) they undertook an actual investigation; (2) at the time of the investigation, litigation appeared likely; and (3) the protected information obtained during the investigation would be of 'use' in the litigation. . . " *Wemhoff*, 887 A.2d at 1011 (citing *Pichler v. UNITE*, 339 F. Supp. 2d 665, 666 (E.D. Pa. 2004) ("*Pichler I*")). On appeal, however, the Third Circuit pointedly noted that it "need not address the District Court's interpretation of the litigation and the acting on behalf of the government exceptions." 542 F.3d at 395.

We find that *Wemhoff* is plainly distinguishable from this case because, as the court in that case indicated, the lawyer was merely trolling for clients in the hope that litigation might be in the offing.

the workers' personal information for a non-permitted use: union organizing. It somewhat belatedly and unpersuasively argued that its union organizing activities could not be disaggregated from its litigation activities. The Third Circuit majority emphatically rejected this argument.[14]

At bottom, we easily conclude from these somewhat conflicting approaches to the DPPA that the Eleventh Circuit's approach provides the better reasoned interpretation of the Act under the facts and circumstances of the instant case. Just as the Florida statutes in *Rine* clearly authorized solicitation in connection with the state's license renewal schemes, South Carolina law and legal ethics norms not only permitted the type of solicitation engaged in by the Lawyers here, but in the context of the particular investigation and incipient litigation they pursued under the Dealers Act, contact with potential clients was entirely consistent with a pragmatic understanding of the litigation exception under the DPPA.

The DPPA provides, "It shall be unlawful for any person knowingly to obtain or disclose information, from a motor vehicle record, for any use not permitted under Section (b) of this title." 18 U.S.C. § 2722. Thus, the DPPA makes unlawful "any use not permitted" in subsection (b). In *Pichler*, where the DPPA defendant claimed to have obtained information for

---

[14]The court could not have been more clear:

> The litigation component to UNITE's campaign should not obscure what UNITE was trying to accomplish-organizing labor. The same may be said for its acting on behalf of the government purpose. UNITE candidly admits that it launched the "campaign to organize and unionize Cintas workers." App. 226. Moreover, the organizers themselves, in conducting their home visits, unambiguously explained that they were "organizing a union campaign against Cintas." App. 238. Regardless of UNITE's attempts to mask this clear labor-organizing purpose behind the veil of a litigation purpose or an acting on behalf of the government purpose, Congress has not permitted UNITE to do so.

542 F.3d at 395-96.

two entirely distinct uses (union organizing, not a permitted use, and in anticipation of litigation, a permitted use), the court rejected the union's disingenuous attempt, admitting of only marginal coherence, to marry an unpermitted use with a permitted one. In contrast, the Lawyers here always had only one use as their purpose, i.e., litigation, litigation that at all times of their conduct was either imminent or ongoing. The Lawyers' satisfaction of the state solicitation requirements was inextricably intertwined with their intended permitted use of the personal information they obtained. *See Ficker*, 119 F.3d at 1153 (noting that "the Supreme Court observed in *Bates* that the dissemination of advertising information to the public had the potential to contribute substantially to fair legal process . . . . Similarly, in *Peel*, 496 U.S. at 110, 110 S.Ct. at 2293, the Court noted that such advertising 'facilitates the consumer's access to legal services and thus better serves the administration of justice'").

In such circumstances, we agree with the *Rine* court that full effect should be given to the permissive uses protected by the litigation exception. To hold otherwise would effectively transform the DPPA's phrase, "any use not permitted," into "use not permitted for any reason" — a shift unsupported by the language, the purpose or the structure of the Act, and contrary to the public interest benefits that can inhere in impact litigation specifically aimed at protecting consumers on a broad scale. In the context of the circumstances presented in this case, it is no stretch to say that the Lawyers simply could not make appropriate, efficient and ethical use of the Buyers' personal information under our pragmatic approach to the litigation exception without first engaging in solicitation, and they did so in a manner that was entirely in keeping with applicable state ethics norms. Put simply, they did what any good lawyer would have done; Congress could not possibly have intended to impose DPPA liability under such circumstances.

We therefore hold that as to DPPA provisions (b)(4) and (b)(12), conduct that might, prima facie, amount to prohibited

solicitation (i.e., that prohibited absent express consent) leading to a disclosure of personal information, does not give rise to a cognizable claim under the DPPA when such use in solicitation is coextensive with, and inextricably intertwined with, conduct expressly permitted pursuant to the litigation exception. *Rine*, 590 F.3d at 1226. We determine next whether the district court erred in concluding that the litigation exception applies to the undisputed facts reflected in the record of this case.

### D.

As stated above, the district court ruled that the litigation exception applied to the Lawyers' conduct because, as a matter of law, the undisputed facts demonstrated that they obtained and used the Buyers' personal information with the singular purpose of employing it in their investigation in anticipation of, and in connection with the prosecution of, the *Herron* litigation:

> The initial complaint and the amended complaint in the *Herron* litigation are evidence that the information obtained from the first two FOIA requests was useful in determining whether to file a group action . . . . The Plaintiffs have failed to come forward with any evidence to dispute the Defendants' evidence that the personal information from the first two FOIA requests was obtained in order to assist in identifying the highest volume dealers.

J.A. 1483-84. This conclusion is unassailable on the present record.

The Buyers argue that this determination was erroneous because the Lawyers "did not come forward with any evidence that they could introduce at trial in support of their position [that the exception applied to their conduct] . . . . None." Appellants' Br. 39. They assert that the district court

relied solely on the Lawyers' "self-serving, unsworn asser-
tions," and a handful of documents that were irrelevant to the
legal question or, in the case of the *Herron* documents, were
merely contextual. Appellants' Br. 38-9. The Lawyers counter
that under the DPPA the Buyers have the burden to offer evi-
dence of an impermissible purpose, yet in the face of the doc-
umented FOIA requests and the DMV's compliance — both
of which were carried out under express invocation of the liti-
gation exception — the Buyers only conclusorily describe the
Lawyers' purpose and use as "solicitation." The Lawyers
clearly have the better of the argument.

Under Fed. R. Civ. P. 56(c):

A party asserting that a fact cannot be or is genuinely
disputed must support the assertion by:

(A) citing to particular parts of materials in the
record, including depositions, documents, electroni-
cally stored information, affidavits or declarations,
stipulations (including those made for purposes of
the motion only), admissions, interrogatory answers,
or other materials; or

(B) showing that the materials cited do not establish
the absence or presence of a genuine dispute, or that
an adverse party cannot produce admissible evidence
to support the fact.

We are satisfied that the district court did not err in conclud-
ing that the Buyers failed to generate a genuine dispute of
material fact concerning the applicability of the litigation
exception.

First, the Buyers' arguments throughout the proceedings
below had been focused solely on the applicability of the liti-
gation provision as a matter of law, i.e., that it did not protect
the use here because the solicitation provision applied as well

and imposed liability regardless of any other permitted use. They did not, however, produce or suggest any evidence that the provision did not apply as a factual matter.

The strongest substantive argument we might construe from the Buyers' position is that solicitation *cannot* occur "in anticipation of" or "in connection with" litigation, 18 U.S.C. § 2721(b)(4), and that if the Lawyers solicited they could not, by definition, have been acting in anticipation of, or in connection with, litigation. Plainly, we have rejected that contention above. In our view, such a position would improperly constrict the common meaning of "in anticipation of" and "in connection with." The solicitation of clients by trial lawyers is surely connected to litigation in that representation for a legal claim is the goal. Here, where the Lawyers already had been contacted by potential clients, it cannot be said they were merely "trolling." Rather, the summary judgment record before us leaves no room to doubt that the Lawyers were looking to build and bolster a case against the dealerships if their initial information from consumers proved the existence of plausibly systemic violations of the Dealers Act.

Moreover, as to the Buyers' contention of procedural irregularity, the district court properly considered the complaints in *Herron* because the allegations made in that case corroborated the expressly stated intended and actual use of the letters in dispute. The Buyers failed to provide any evidence refuting the explicit language of the FOIA requests and letters, which solely support the claim that the Lawyers' conduct was either for use in "investigation in anticipation of litigation" or "in connection with" a civil proceeding. *Id.*

To be sure, the Buyers correctly note that the district court declined to take judicial notice of these documents for purposes of ruling on the motion to dismiss. At the time of that motion, the court explained:

> [T]he court declines to take judicial notice of the exhibits attached to the Defendants' motion in this

> case which largely consist of pleadings and tran-
> scripts in the *Herron* litigation . . . . The facts in the
> *Herron* litigation remain in dispute. Therefore, the
> court cannot take judicial notice of the contents of
> those documents.

J.A. 167. Thus, the district court took a cautious approach in its consideration of the Lawyers' Fed. R. Civ. P. 12(b)(6) motion to dismiss. Nevertheless, for purposes of the subsequent cross-motions for summary judgment, the *Herron* complaints and related documents were useful (and used) not to determine the factual basis of the Dealers Act claims, but as evidence only of the actual use of the Buyers' personal information obtained via the serial FOIA requests in connection with that litigation. The complaints evidenced the ends to which the information was requested and used, and therefore were relevant, material and admissible evidence of facts at issue—permissible purpose in the Lawyers' requesting that the DMV make the disclosure of, and permitted use of the personal information thereafter. We agree with the Eleventh Circuit that the Buyers bore the risk of non-persuasion on all elements of their claims, *Thomas*, 525 F.3d at 1114-15, and here the summary judgment record does not remotely show a genuine dispute of material fact.

We therefore hold that the district court properly took judicial notice of the *Herron* documents as probative evidence of the intended, and actual, use of the Buyers' DPPA-protected personal information. Furthermore, we agree that the Buyers failed to offer any evidence generating an issue of material fact as to whether the use here was inextricably intertwined with investigation and prosecution of the *Herron* litigation. Thus, the district court did not err in its grant of summary judgment in favor of the Lawyers as to the applicability of the litigation exception.

## III.

For the foregoing reasons, we hold that the district court erred in its determination that the conduct of the Appellees

did not constitute solicitation within the contemplation of the applicable DPPA prohibition. Nevertheless, the court correctly ruled that the Appellees' conduct in respect to the Buyers' personal information was undertaken in anticipation of and in connection with litigation, a use clearly permitted by the DPPA. The propriety of that use having been established as a matter of law, and the antecedent solicitation being integral and necessary to, and inextricably intertwined with, the Lawyers' permitted use of the Appellants' personal information, the Appellants' claims fail as a matter of law. Accordingly, the judgment is

*AFFIRMED*.